In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2112

United States for the use and benefit
of S&G Excavating, Inc.,

Plaintiff-Appellant,

v.

The Seaboard Surety Company, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. TH 97-276-C-T/F--John Daniel Tinder, Judge.

Argued November 3, 2000--Decided January 10, 2001

Before Flaum, Chief Judge, and Easterbrook and
Williams, Circuit Judges.

Easterbrook, Circuit Judge.  An unpaid
subcontractor on a federal project can obtain
compensation from a bond posted under the Miller
Act. A subcontractor hired by the general
contractor may proceed directly against the
general contractor's bond. A sub-subcontractor--
that is, a firm hired by a subcontractor, and not
dealing directly with the general contractor--
must first notify the general contractor of its
situation. A sub-subcontractor

shall have a right of action upon the said
payment bond upon giving written notice to said
contractor within ninety days from the date on
which such person did or performed the last of
the labor or furnished or supplied the last of
the material for which such claim is made,
stating with substantial accuracy the amount
claimed and the name of the party to whom the
material was furnished or supplied or for whom
the labor was done or performed.

40 U.S.C. sec.270b(a). This statute sets up three
conditions to payment from the bond: (1) notice
must be given within 90 days of the sub-
subcontractor's last work; (2) the notice must
"stat[e] with substantial accuracy the amount
claimed"; and (3) the notice must include "the

name of the party to whom the material was furnished or supplied or for whom the labor was done or performed." Our case presents the question whether a sub-subcontractor must meet a fourth requirement: that the notice include an explicit demand for payment. We hold that it need not; compliance with the Miller Act's express requirements suffices.

S&G Excavating furnished materials and labor for the construction of a new facility for the Postal Service in Terre Haute, Indiana. Austin Corporation was the general contractor and engaged Seaboard Surety to supply the required bond. Austin hired EUI Corporation to build the project's concrete foundation; EUI in turn selected S&G Excavating to do part of the foundation work, making S&G a sub-subcontractor on the project. S&G finished its work on April 2, 1997, and sent EUI a bill for about $73,000. When EUI did not pay, S&G filed a notice of mechanic's lien in the Office of the Recorder of Vigo County, Indiana, and on May 6, 1997, mailed Austin a notice of this fact. The envelope contained two documents: a copy of the "Notice of Intention to Hold Mechanic's Lien" that had been filed with Vigo County, and an itemized bill revealing exactly what work had been done, what compensation was sought, and the identity of the firm that had hired S&G. This notice satisfied all three requirements of sec.270b(a): It arrived within 90 days, it stated the amount claimed ($72,526.40), and it stated the name of the party (EUI) on whose behalf the work had been done. What it did not do was demand explicitly that Austin pay in EUI's stead. S&G did not take that additional step until a few days after the 90-day window closed. According to the district court, this was a fatal blunder. Five courts of appeals have held that the notice must inform the general contractor, either expressly or by implication, that the sub-subcontractor wants the general contractor to pay the bill. See United States ex rel. Water Works Supply Corp. v. George Hyman Construction Co., 131 F.3d 28, 32-33 (1st Cir. 1997); Maccaferri Gabions, Inc. v. Dynateria Inc., 91 F.3d 1431, 1437 (11th Cir. 1996); United States ex rel. Blue Circle West, Inc. v. Tucson Mechanical Contracting Inc., 921 F.2d 911, 914-15 (9th Cir. 1990); United States ex rel. Jinks Lumber Co. v. Federal Insurance Co., 452 F.2d 485, 487-88 (5th Cir. 1971); United States ex rel. Charles R. Joyce & Son, Inc. v. F.A. Baehner, Inc., 326 F.2d 556, 558 (2nd Cir. 1964). The district judge recognized that one circuit has held otherwise, see McWaters & Bartlett v. United States ex rel. Wilson, 272 F.2d 291, 295 (10th Cir. 1959), but declined to follow that decision. The judge then dismissed S&G's effort to collect from the retainage held by the Postal

Service, see 93 F. Supp. 2d 968 (S.D. Ind. 2000), a final decision that sent S&G away empty handed.

We think that McWaters & Bartlett got this right. The district court criticized the tenth circuit for the brevity of its explanation, but it does not take much space to say that if a statute sets out three conditions to payment, then a notice meeting all three is sufficient. Judges are not authorized to add requirements of their own devising. It is not as if the Miller Act were internally contradictory, or had a logical gap that cried out to be filled, or would produce absurd results if enforced as written. Application of the unelaborated text is perfectly sensible. Indeed, the circuits that require an express or implied demand for payment essentially concede as much. When would a notice, delivered to the general contractor, stating the amount claimed and the identity of the subcontractor, not be an "implied" demand for payment? How else would a general contractor, familiar with the Miller Act's rules, read such documents? S&G's papers alerted Austin to a problem between EUI and S&G, implied the need for Austin to hold back funds to resolve this dispute, and thus fulfilled every function plausibly imputed to sec.270b(a). Sooner or later, Austin was going to have to do something to clear the lien, so that it could deliver an unencumbered building to the Postal Service. (Usually federal projects are not subject to liens, but Congress has waived sovereign immunity for the Postal Service, see Loeffler v. Frank, 486 U.S. 549 (1988); Franchise Tax Board v. USPS, 467 U.S. 512 (1984), a step that likely renders S&G's lien effective, see Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 265 (1999)--though this is not an issue we need resolve.) A general contractor has to recognize that a sub-subcontractor's notice of lien implies a demand to be paid. If this is all these circuits require of an "express or implied" demand for payment, then they have added nothing important but have complicated litigation. But if, as the district court thought, they require something close to the "express" side of the "express or implied" continuum, then they have rewritten rather than interpreted the Miller Act.

The only support we can imagine for requiring the sub-subcontractor to demand that the general contractor itself settle the account would be a belief that this is implicit in the idea of "notice": the sub-subcontractor is supposed to be sending the general contractor a message that it wants payment. Yet this would be an uncommon reading of "notice": a notice of appeal, for example, need not contain an express (or even an implied) demand for reversal, which comes later in the brief; a notice of a club's meeting need

not contain a demand for attendance. Usually notices provide information; a demand to act in a particular way is not part of the ordinary meaning of "notice." A statute requiring more would call for a "claim" (as, for example, the Federal Tort Claims Act does, see 28 U.S.C. sec.2672). The word "claim" appears in sec.270b(a) only in reference to the amount the sub-subcontractor believes that the subcontractor owes. The general contractor needs to know this sum, and under sec.270b(a) must be notified of it; more would be otiose.

Some statutes implicitly invite the judiciary to add implementing details. But notice rules usually are applied mechanically, so that people who read the statute are not tripped up, and so that litigation does not become bogged down in preliminary issues. See United States v. Locke, 471 U.S. 84 (1985). Adding requirements to the Miller Act would be particularly inappropriate, for the Supreme Court has characterized it as "remedial legislation" that should be read charitably to subcontractors. Fleisher Engineering & Construction Co. v. United States ex rel. Hallenbeck, 311 U.S. 15, 17 (1940). The "remedial" tag does not justify dispensing with requirements stated in the statute or otherwise altering its rules, Director, OWCP v. Newport News Shipbuilding & Dry Dock Co., 514 U.S. 122, 135-36 (1995), but it precludes adding to the burdens of one who relies on it. The Miller Act specifies means as well as ends; a court should not use its view of the best way to achieve the legislative ends to override the legislature's specification of means. S&G Excavating could have saved itself a lot of trouble and expense by sending Austin a cover letter making clear what the notice and the bill implied, but it did enough to satisfy its obligations under sec.270b(a).

Our resolution of S&G's Miller Act claim makes it unnecessary to decide whether, and if so under what circumstances, the Postal Service could be required to pay a sub-subcontractor out of retainage. S&G is entitled to compensation from the bond--if it is entitled to compensation at all. The parties dispute whether S&G's work was satisfactory, and on remand the district court must resolve that disagreement and any other lingering matters.

Reversed and Remanded