## A00A1980. DAVIS v. RICH'S DEPARTMENT STORES, INC.
(545 SE2d 661)

PHIPPS, Judge.

Bradford Davis appeals the trial court's grant of summary judgment in favor of Rich's Department Stores, Inc. in this action alleging tortious misconduct and violation of the Fair Business Practices Act (FBPA).[1] Because there is no evidence that Rich's engaged in an unfair business practice or treated Davis in an abusive manner, we affirm.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2] We review a grant of summary judgment de novo, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant.[3]

So viewed, the record shows that, in December 1994, an unknown person used Davis's name, Social Security number, and address to open credit accounts with several retailers, including Rich's, and charged merchandise to those accounts. Davis testified that he learned of the fraud in mid-December when one of the stores called him about a purchase and that he immediately contacted the police and the Credit Bureau.

In January 1995, Davis received a bill from Rich's for clothing charged to the fraudulent account. Davis neither paid the bill nor

---

[1] OCGA § 10-1-390 et seq.
[2] *Testamentary Trust of Moseley v. Barnes*, 245 Ga. App. 817 (538 SE2d 873) (2000).
[3] Id.

contacted Rich's about it, but simply "held on to it."[4] After receiving four or five more statements from Rich's, however, Davis called the store in April 1995. He testified that he asked the employee on the telephone to send him "whatever forms I need to fill out to let you know I've been a victim" and that the employee promised to do so.

After a week passed and Davis received nothing from Rich's, he called the store again. The employee with whom he spoke had no record of his previous call, so he "had to tell them the story over again." The employee told Davis that he needed to send Rich's copies of his photo ID and the police report, as well as a notarized statement that he was a fraud victim.

After receiving letters from collections agencies regarding the Rich's account, Davis called Rich's a third time in September 1995. Once again, he said, the store had no record of his previous calls, and he had to repeat his story. On or about September 30, 1995, Davis sent Rich's copies of the police report and his photo ID, along with a notarized statement explaining the fraud. He could not explain why he waited five months to send these items. Rich's claims that it never received them.

Sometime thereafter, Davis tried to buy a truck and learned that his credit report reflected an unpaid debt to Rich's. He sent Rich's a certified letter, which it did receive, asking the store to "clear my account, my name and my credit history."

Kima Wilson, Rich's fraud supervisor, testified that Rich's does not begin investigating fraud claims until the claimant sends a picture ID and a notarized letter detailing the alleged fraud. Wilson admitted that the store might turn an account over to a collections agency, notwithstanding a legitimate claim of fraud, "[d]epending on the information that we received or we did not receive."

Wilson testified that the store's computer records show that Davis first notified Rich's in April 1995 that he was a victim of fraud. Rich's turned the account over to a collections agency on May 25, 1995, without conducting any investigation into Davis's claim.

Davis sued Rich's for tortious misconduct and violation of the FBPA.[5] The trial court granted summary judgment to Rich's on both claims. The court ruled that the FBPA provides no redress for "an isolated incident resulting from essentially private transactions"[6] and that the conduct of Rich's did not rise to the level of tortious misconduct.

---

[4] Davis explained that a Credit Bureau employee had told him "that they would inform everyone of what was going on, all my creditors."

[5] Davis also alleged claims for invasion of privacy and libel. However, he voluntarily dismissed the former and does not challenge the grant of summary judgment on the latter.

[6] Davis contends that the parties never raised, briefed, or argued this question, but a review of the record shows that Rich's did raise the issue in its summary judgment brief.

1. The FBPA prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts."[7] Because the FBPA is designed to protect the general consuming public, it is concerned only with acts or practices that harm, or could harm, the consumer marketplace.[8] The FBPA does not serve "as the basis for a new private remedy for individuals who are damaged by acts or practices which have no potential for impact on the general consuming public."[9] In other words, the act does not apply to "transactions that are essentially private."[10]

Citing Wilson's deposition testimony, Davis claims that the FBPA applies here because Rich's was acting pursuant to "a policy to collect all debts, even those in which the consumer has been the victim of credit fraud." This is a mischaracterization of Wilson's testimony. However, Wilson did acknowledge the possibility that the store might turn an account over to a collections agency despite a claim of fraud if the claimant failed to send a photo ID and notarized letter. Thus, there is evidence that the handling of Davis's fraud complaint was not merely an isolated incident, but was part of an established store policy that could affect the general consuming public.

But does this policy constitute an "unfair or deceptive act or practice" within the meaning of the FBPA?[11] The act provides a nonexclusive list of unlawful practices that does not include the policy at issue here.[12] Except in plain and indisputable cases, whether particular conduct not listed in the FBPA amounts to an "unfair or deceptive act or practice" is a question for the jury.[13] We find that this is one of those plain and indisputable cases that may be decided as a matter of law.

Davis argues that it is unfair for Rich's to demand that a consumer "jump through its hoops." But requiring a fraud claimant to send a notarized letter and a photo ID before the store will investigate does not appear onerous or unreasonable. The fact that Davis ultimately sent the requested documents — albeit five months after Rich's asked for them — shows that he was capable of complying

---

[7] OCGA § 10-1-393 (a).

[8] *Zeeman v. Black*, 156 Ga. App. 82, 84-85 (273 SE2d 910) (1980); *Chancellor v. Gateway Lincoln-Mercury*, 233 Ga. App. 38, 43-44 (2) (502 SE2d 799) (1998).

[9] *Zeeman*, supra at 84.

[10] (Citation and punctuation omitted.) *Medley v. Boomershine Pontiac-GMC Truck*, 214 Ga. App. 795, 796 (2) (449 SE2d 128) (1994) (customer could not sue car dealership under FBPA for representing to him that vehicle it sold him was a demonstrator when it was a rental fleet vehicle, in the absence of evidence that dealership had advertised vehicle to general public as demonstrator). See also *Zeeman*, supra (no FBPA claim based on isolated oral misrepresentation by a realtor to a home buyer).

[11] See *Regency Nissan v. Taylor*, 194 Ga. App. 646, 647 (2) (391 SE2d 467) (1990).

[12] See OCGA § 10-1-393 (b).

[13] *Regency Nissan*, supra at 648.

with the store's policy. The policy simply is not the kind of "reprehensible conduct" that the FBPA was designed to redress.[14]

Arguably, Rich's deviated from its credit fraud policy by not promptly investigating Davis's claim *after* he sent the requested information in September 1995.[15] However, there is no evidence of other instances in which Rich's failed to follow its policy. Any deviation in this case, accordingly, must be viewed as an isolated event that had no impact on the general consuming public and that is therefore beyond the reach of the FBPA. The trial court properly granted summary judgment to Rich's on the FBPA claim.[16]

2. Summary judgment also was proper on Davis's claim of tortious misconduct. This tort is based on the principle that

> one who [owns] a mercantile establishment for the purpose of selling goods owes a duty to a customer, lawfully in his store by his implied invitation for the purpose of transacting business, to protect the customer against the use of any unprovoked and unjustifiable opprobrious and insulting and abusive words by a clerk employed by him to deal with customers, tending to humiliate, mortify, and wound the feelings of the customer.[17]

Davis has presented no evidence of the sort of insulting or abusive behavior this tort is intended to redress.[18] He testified that his claim is not based on anything that happened while he was physically present at a Rich's store. Moreover, he described no harassment or abuse in his few telephone conversations with Rich's employees; in fact, he recalled very little about them. Nevertheless, Davis contends that "two years of dunning" amounts to abuse within the meaning of this tort. We find no authority for the proposition that tortious misconduct can be based on anything other than personal contact between a

---

[14] *Standish v. Hub Motor Co.*, 149 Ga. App. 365, 366 (254 SE2d 416) (1979); see also *DeLoach v. Gen. Motors*, 187 Ga. App. 159, 160-161 (369 SE2d 484) (1988) (car dealership's policy of refusing to provide customer with new car after customer declined to have dealership repair original car was not "unfair practice" under FBPA).

[15] Although Rich's claims that it never received the documents, we construe the facts in favor of Davis.

[16] The trial court did not consider the question of whether Rich's alleged conduct constituted an "unfair practice" under the FBPA. The parties briefed that issue, however, and we will affirm a grant of summary judgment if it is right for any reason. *Bennett v. Cotton*, 244 Ga. App. 784, 787 (2) (536 SE2d 802) (2000).

[17] (Citation and punctuation omitted.) *Doe v. Village of St. Joseph*, 202 Ga. App. 614, 617 (3) (415 SE2d 56) (1992).

[18] Compare, e.g., *Revco Discount Drug Centers &c. v. Famble*, 173 Ga. App. 330, 331-332 (4) (326 SE2d 532) (1985) (jury could find tortious misconduct where customer complained that store clerk made loud, angry, and false accusations of shoplifting in front of other customers).

merchant and a customer. Even if it could, we disagree that a handful of telephone calls and collections letters, none involving opprobrious or disrespectful language, can rise to the level of tortious misconduct.

*Judgment affirmed. Johnson, P. J., and Smith, P. J., concur.*

DECIDED FEBRUARY 19, 2001.

*James M. Green*, for appellant.
*Powell, Goldstein, Frazer & Murphy, Christopher P. Galanek, King & Spalding, Samuel M. Matchett, William L. Hawthorne III*, for appellee.