In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2853

United States of America for the use and benefit
of Aldridge Electric Company, Inc., and Reliance
Insurance Company,

Plaintiffs-Appellants,

v.

Pickus Construction & Equipment Co., Inc.,
and The American Insurance Company,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 3261--Ruben Castillo, Judge.

Argued March 29, 2001--Decided May 4, 2001

   Before Easterbrook, Rovner, and Diane P.
Wood, Circuit Judges.

   Easterbrook, Circuit Judge.  Pickus
Construction was the general contractor
for the Damage Control Building at the
Great Lakes Naval Training Center in
Illinois, and because the United States
was the client the project was covered by
the Miller Act, 40 U.S.C. secs. 270a-
270d. Pickus hired Metrick Electric Co.
to work on the project. As the Miller Act
requires, Pickus secured a bond (through
American Insurance Co.) for the benefit
of Metrick, which posted its own bond
(through Reliance Insurance Co.) for the
benefit of Pickus and the Navy. Before
completing the electrical installation
Metrick became insolvent and stopped
work. Reliance assumed Metrick's
obligation to finish the project and also
acquired Metrick's rights (including its
right to be paid for successful
completion). Reliance engaged Aldridge
Electric Co., which finished the project
to the Navy's satisfaction. Pickus paid
Reliance the full price that had been
promised to Metrick. But Reliance wants
more. It contends that Pickus's delay in
completing the Damage Control Building
increased the expense of the electrical
work by some $400,000, which Reliance
says it had to pay Aldridge and wants

Pickus to cover; when Pickus refused, Aldridge and Reliance brought this suit under the Miller Act against Pickus and American. At the close of plaintiffs' case in a bench trial, the district judge concluded that Pickus does not owe anything on top of the price it negotiated with Metrick. See Fed. R. Civ. P. 52(c).

Our first question is: Why is Aldridge a plaintiff? Reliance has paid Aldridge the full agreed price for its work, and it is hard to see how Pickus could owe Aldridge anything. Any loss as a result of Pickus's scheduling problems has been borne by Reliance, not Aldridge. At oral argument counsel said that Aldridge and Reliance had agreed to share any recovery from Pickus, but this does not make Aldridge a proper plaintiff any more than a lawyer working on contingent fee becomes a party to the case. If Reliance had promised to pay half of its winnings to its ceo as a bonus, or to its bank to retire a loan, neither the ceo nor the bank would become entitled to sue Pickus. The only entity in privity with Pickus, and the only one arguably entitled to extra compensation, is Reliance, which stepped into Metrick's shoes and must be treated as Pickus's electrical subcontractor. Our conclusion that Aldridge is not a proper party enables us to pretermit some tricky questions, such as whether Aldridge, as a sub-subcontractor, made a timely claim. Cf. United States ex rel. S&G Excavating, Inc. v. Seaboard Surety Co., 236 F.3d 883 (7th Cir. 2001). The district court's problematic decision to disregard the statutory requirements for claims by sub-subcontractors, 40 U.S.C. sec.270b(a), is accordingly a subject on which we express no opinion.

Aldridge's presence in the case had an unfortunate effect at trial, for the district judge concentrated his attention on its nonexistent claims and did not discuss the more substantial claims that Reliance possesses (if only by subrogation from Metrick) as Pickus's electrical subcontractor. Most of the district judge's oral findings of fact, delivered immediately after plaintiffs rested, deal with Aldridge's situation. For example, the judge disbelieved the testimony of Aldridge's managers that they did not appreciate how far behind

the project was when they took over; the judge also disbelieved testimony by these managers to the effect that they thought they had no option other than to work extra fast (and at extra expense) to catch up. The judge thought that Aldridge should have understood (or readily could have learned) that the Navy had decided not to enforce the schedules in the original contract. The district judge also concluded that the project fell behind by only eight days during the time Aldridge was on the job, and that this variation was within the norm for large construction projects, and thus could not have caused Aldridge any injury. What the judge did not discuss, however, is whether the 100-day delay before Metrick's insolvency caused injury by requiring Metrick to rearrange its own schedules in order to synchronize its work with other components of the project. A subcontractor is entitled to compensation for extra expense caused by the need either to delay or to accelerate its work in order to mesh with the progress of other contractors, whose efforts may be essential to (or may depend on) the work of the electrical subcontractor. See, e.g., Consolidated Electrical & Mechanicals, Inc. v. Biggs General Contracting, Inc., 167 F.3d 432, 434-35 (8th Cir. 1999); Amp-Rite Electric Co. v. Wheaton Sanitary District, 220 Ill. App. 3d 130, 580 N.E.2d 622 (2d Dist. 1991). (We cite both federal and state cases because the parties have slighted choice-of-law issues; although many courts assume that federal law governs all issues if a bond had been posted under the Miller Act, this is far from clear. See Turner/Ozanne v. Hyman/Power, 111 F.3d 1312 (7th Cir. 1997). But there is no salient difference between Illinois law and the principles other circuits have devised for Miller Act litigation, so we need not pursue this question.) As the successor to Metrick's rights, Reliance is entitled to recover from Pickus (and American) whatever Metrick could have recovered. It is irrelevant for this purpose that Aldridge replaced Metrick. Damages (if any) depend on how a single contractor that was on the job the whole time would have been affected by the delay; Metrick's abandonment of the job neither increases nor reduces Pickus's exposure, which should be evaluated as if Metrick had been the electrical subcontractor

from start to finish. By concentrating on what happened after Aldridge took over, the district judge missed the boat.

Now it may be that the parties rather than the judge bear most of the responsibility. Reliance, after all, dragged Aldridge into this suit and controlled the presentation of evidence at trial. At oral argument counsel for Pickus and American contended that plaintiffs had devoted their case to events after Metrick's replacement, effectively abandoning any claim that Reliance holds as the subrogee of Metrick's rights. The problem with this response is in the opening phrase: "At oral argument . . .". Reliance squarely presented a subrogation claim in its brief--it is the basis for the bulk of Reliance's damages--and Pickus failed to respond. Pickus not only neglected to argue that Reliance had omitted such a claim at trial but also offered no reply of any other kind. By silence it effectively conceded the core of Reliance's position. Pickus thus has forfeited any entitlement to the benefit of Reliance's forfeiture at trial (if there was one, a subject we need not consider; though we add that the trial record contains some evidence of injury to Metrick, for otherwise a remand would be pointless). Moreover, Pickus has forfeited a second potential defense: that in a contract (which the parties call the Takeover Agreement) negotiated between Pickus and Reliance after Metrick's default, Reliance may have given up any entitlement to damages as Metrick's subrogee. Pickus does make a short argument that Reliance has no claim for breach of the Takeover Agreement, but it does not attempt to use the Takeover Agreement as a response to Reliance's subrogation claim. Perhaps this strategy (or lack of one) suggests that it was Pickus that persuaded the district judge to concentrate on Aldridge almost exclusively, and Pickus took itself in as well. However that may be, now that Aldridge is out of the case it is essential to determine what claims Metrick (and thus Reliance) may have against Pickus.

Because the district judge stopped the trial without hearing defendants' case, what we have said about the events may reflect the incompleteness of the

evidence. The record must be fleshed out, and in light of Circuit Rule 36 this means a complete new trial before a different district judge.

Reversed and Remanded