A02A1722. SOUTHERN ELECTRIC SUPPLY COMPANY
v. TREND CONSTRUCTION, INC. et al.
(578 SE2d 279)

ANDREWS, Presiding Judge.

The issues in this appeal are whether a supply company that provided electrical equipment to a subcontractor engaged in a public works project gave sufficient notice of its claim under a payment bond obtained by the general contractor under Georgia's Little Miller Act, and whether suit against the contractor was timely filed. The trial court found that Southern Electric Supply Company (Southern)

---

failed to provide proper written notice of its claim to Trend Construction, Inc. (Trend) as required by that Act. The court also found that Southern's lawsuit was time-barred because Southern did not file suit within one year of June 1999, when "the Project was substantially complete and had been accepted."

Southern challenges both findings, arguing that the trial court misconstrued the law and overlooked certain facts. We agree and reverse.

Trend was the general contractor on the Georgia Perimeter College Testing Center and Computer Training Center project which involved certain renovations to a testing lab and a lecture hall in an existing building for a contract price of $445,600. Before beginning work, Trend obtained performance and payment bonds from Fidelity & Guaranty Insurance Company. The payment bond afforded protection to persons not fully paid for materials or equipment furnished or supplied to the project.

During the project, Trend subcontracted with Georgia Electrical Contractors, Inc. (GEC) to provide labor and materials. GEC purchased all of its electrical supplies from Southern on an open account, but failed to pay Southern for those supplies. Unable to obtain payment from GEC, Southern sued Trend and United States Fidelity & Guaranty Company (USF&G), the surety on the payment bond. Southern claimed that GEC owed $34,843.33 plus interest, for electrical supplies that GEC obtained from Southern and used in the Perimeter College project.[1]

Both Trend and Southern filed motions for summary judgment. The trial court granted Trend's motion, finding that Southern did not give Trend sufficient notice of its claim and also that Southern's suit was barred by the one-year statute of limitation. This appeal followed.

1. Southern contends the trial court erred as a matter of law and fact in finding that the notice provisions of the Georgia Little Miller Act, former OCGA § 36-82-104 (b) (1), were not met.[2] The trial court held that nothing in the faxed invoices could be construed as implying a demand on Trend for payment and also held that the written demand for payment could not be satisfied by sending a fax.

---

[1] After Southern filed the underlying action, Trend filed a third-party complaint against GEC and its president, Richard Turner. Claiming to have paid GEC "periodic draws in the total amount of $34,046.00," Trend alleged that GEC had fraudulently represented to Trend that "the draw payments would be utilized to pay Third Party Defendants' suppliers, including Plaintiff [Southern]." Trend obtained a default judgment against GEC and Turner. GEC is no longer in business.

[2] Although in effect at the time Southern's claim arose, OCGA §§ 36-82-100 through 36-82-105 were repealed and later reenacted. See Ga. L. 2000, p. 498, § 4, effective April 20, 2000, and OCGA §§ 13-10-60 through 13-10-65.

In considering the grant of a motion for summary judgment, this Court conducts a de novo review to determine whether the trial court correctly found the absence of material issues of fact. *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (437 SE2d 832) (1993). In conducting this review, we consider the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant. *Davis v. Rich's Dept. Stores*, 248 Ga. App. 116 (545 SE2d 661) (2001).

As a condition precedent for recovery under a payment bond, former OCGA § 36-82-104 (b) (1) required a supplier to give "written notice to the contractor within 90 days from the day on which such person . . . furnished the last of the material . . . for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied." Courts have added an additional requirement to the statute; namely, that the writing must inform the prime contractor, expressly or by implication, that the supplier is looking to the contractor for payment of the subcontractor's bill. See, e.g., *Amcon, Inc. v. Southern Pipe &c. Co.*, 134 Ga. App. 655, 657 (215 SE2d 712) (1975).

The purpose of providing sufficient notice of a claim is "to place the general contractor and its bondsman in a position to protect themselves." *Amcon*, supra. Even so, "the Georgia act giving materialmen the right to sue on the contractor's bond on public works projects, is a remedial law and therefore is to be liberally construed to secure that object." *Huddleston Concrete Co. v. Safeco Ins. Co. &c.*, 186 Ga. App. 531, 533 (1) (368 SE2d 117) (1988).

Southern submitted evidence that on or about March 27, 1999, Southern's district credit manager, Paul Hunt, called Ed Davis, the president of Trend and told him about GEC's failure to pay its account with Southern. Hunt testified that "[t]he purpose of my discussions with Mr. Davis was to inform him that Georgia Electrical owed Southern $34,843.33 in electrical materials supplied to the Project, and that Georgia Electrical had never paid any amount to Southern for these materials." According to Hunt, he called Davis "to see that the outstanding invoices relating to the Project were paid." Hunt further testified, "I requested that Mr. Davis assist me in seeing that these outstanding amounts were paid. I also conveyed to Mr. Davis that if Georgia Electrical did not pay these amounts, then Southern would look to Trend to pay these amounts."

On March 27, Hunt faxed Davis a copy of the "Statement of Account on Perimeter College Project" for "Georgia Electrical Contr.," and enclosed three pages of invoices. The last page of the statement faxed to Trend shows that as of March 25, 1999, GEC owed $35,366.26 to Southern.

Davis confirmed that "[o]n or about March 27, 1999 I received a

telephone call from Paul Hunt, a representative of Southern Electric regarding invoices payable by Georgia Electrical." Davis added, "Mr. Hunt told me that Georgia Electrical owed Southern Electric on various invoices." Davis stated that Trend never received any demand for payment from Southern, either orally or in writing.

Turner, GEC's president, testified that he received a letter from Davis dated March 29, 1999, where Davis advised Turner as follows:

> As you are aware from our telephone conversation today, we are very concerned about your firm completing the above project. You assured me that you wanted to complete the project and would provide sufficient personnel to complete the remaining electrical work on this project. I also advised you we would not issue any further payments on this project to Georgia Electrical Contractors, Inc. until project is complete. We will schedule payments to Southern Electrical Supply Co. by joint check after all material has been purchased to complete this project. We have talked with your electrical supplier Southern Electric Supply Co., Mr. Paul Hunt, who advised me Georgia Electrical Contractors would not be extended any additional credit. Southern Electric Supply is also holding the dimmer panel, which we need, and will not release until payment of $8,000.00 is received. Mr. Hunt agreed to release the panel if Trend Construction, Inc. would issue a joint check.

Turner also testified that in late March, "[i]n my discussions with Mr. Davis around that time, I knew that he was aware that Georgia Electrical had not paid Southern for any of the materials and supplies which it ordered for the Project, and that Southern had asked Mr. Davis to see that payment was made."

We conclude that the evidence, as set out above, shows that Trend received sufficient notice under the statute of Southern's claim. In looking at case law interpreting this statutory provision, we note that this Court has liberally construed it to conclude the supplier furnished the requisite notice.

> In no case has writing been held unnecessary. But there has been liberality as to the manner of communicating the written notice to the contractor. It is not necessary that the writing relied on be signed by the supplier, *it is sufficient that there exists a writing from which, in connection with oral testimony, it plainly appears that the nature and state of the indebtedness was brought home to the general contractor.* When this appears the object of the statute, to assure that

the contractor will have notice, is attained and the statute is sufficiently complied with.

(Citations and punctuation omitted.) *Fireman's Fund Ins. Co. v. Foster Remodeling Co.*, 177 Ga. App. 711, 713 (340 SE2d 668) (1986).

In *Foster Remodeling Co.*, the evidence was that the supplier met with the prime contractor's president and showed him copies of unpaid invoices. There was also evidence that the supplier told the prime contractor that the invoices were unpaid and he wished the contractor to pay the bills. Id. at 713. Under these facts, this Court held that summary judgment in favor of the contractor was properly denied. Id.

Likewise, in *Devore & Johnson, Inc. v. Bowen & Watson, Inc.*, 216 Ga. App. 63 (453 SE2d 67) (1994), this Court found that the trial court erred in granting summary judgment to the contractor. The notice in that case consisted of a letter sent by certified mail, stating the name of the party to whom the materials were furnished and the outstanding balances due. Id. at 64. "Although the letter did not specifically indicate that it was sent for the purpose of providing Bowen & Watson, Inc. with notice pursuant to the statute, such indications could be found to be implicit in the letter and therefore in compliance with OCGA § 36-82-104." Id.

In *Amcon*, supra, the notice consisted solely of the letter from the supplier's attorney stating that " 'the total amount owed our client as of July 9 is $5,119.27.' " This was held to be sufficient. Id. at 656.

*Porter-Lite Corp. v. Warren Scott Contracting Co.*, 126 Ga. App. 436 (191 SE2d 95) (1972) (physical precedent only), cited by the trial court in its order, is not persuasive. First, the case is physical precedent only and therefore is not binding. Court of Appeals Rule 33 (a). Second, it does not comport with the body of case law in this area. In any event, the court in *Porter-Lite* held that invoices were not sufficient written notice, stating that the invoices did not give notice to the contractor that they had not been paid. Id. at 441. In the instant case, the invoices clearly show the amount outstanding and there was no argument that Trend was unaware of the amount owed.

In addition, there is a recent federal case construing the notice provisions of the federal Miller Act and holding that a demand for payment, be it expressed or implied, is not required. *United States ex rel. S&G Excavating v. Seaboard Surety Co.*, 236 F3d 883, 884 (7th Cir. 2001), noted that the statute only requires notice within 90 days stating with substantial accuracy the amount claimed and the name of the party to whom the material was supplied. Because the statute was clear and unambiguous, the court questioned the need for courts to add the additional requirement of a demand for payment. Stating the obvious, the Seventh Circuit inquired, "When would a notice,

delivered to the general contractor, stating the amount claimed and the identity of the subcontractor, not be an 'implied' demand for payment?" Id. at 885.

Here, no later than March 27, 1999, Southern told Trend that GEC had failed to make payments on its account to its supplier. By faxing the list of invoices, Southern gave a listing of the outstanding charges, all designated as materials ordered for use in the "Ga. Perimeter College" project. The statement faxed to Trend included the name of the party to whom the materials were furnished, the purpose for which the supplies were ordered, and computation of the outstanding balance. These communications occurred within 90 days of March 23, 1999, the last day on which Southern furnished supplies to GEC. Thus, Southern informed Trend with substantial accuracy as to the amount claimed and the name of the party to whom that material was supplied. Therefore, we find that "[a]lthough the tenor of the [communication] could have been more explicit, we believe that it was clearly designed to and did inform the prime contractor that his supplier was looking to him for payment of the subcontractor's bill." (Citations and punctuation omitted.) *Devore & Johnson*, supra at 64-65.

With regard to the court's finding that sending the invoices by fax was not sufficient, we disagree. The court cites to no authority for this holding, and indeed, case law is to the contrary. Georgia courts have declined to mandate any specific manner of delivery of the notice where receipt within the statutory 90 days was not challenged. See, e.g., *Amcon*, supra at 657; *Devore & Johnson*, supra at 64 (writing must be sent or *presented* to the prime contractor). See also *Fleisher Engineering &c. Co. v. United States ex rel. Hallenbeck*, 311 U. S. 15 (61 SC 81, 85 LE 12) (1940) (mode of service is not material when required written notice within specified time was actually given and received); *Southern Steel Co. v. United Pacific Ins. Co.*, 935 F2d 1201, 1203, n. 1 (11th Cir. 1991) (although notice was sent by Federal Express, rather than by registered or certified mail as the statute requires, the only consequence of the substitution under Georgia law seems to be that the notice is deemed given when received by the surety or prime contractor, rather than when mailed by the supplier).

We conclude that Southern's communications to Trend sufficiently complied with former OCGA § 36-82-104 (b) (1), and informed Trend with substantial accuracy of the amount claimed and the name of the party to whom the material was supplied. The trial court erred in not granting summary judgment to Southern on this issue.

2. Southern also contends the trial court erred in finding its lawsuit was barred by the one-year statute of limitation in former OCGA § 36-82-105, claiming that a genuine issue of material fact remains as to whether the statute of limitation in this case has run. We agree.

The applicable statute of limitation, former OCGA § 36-82-105, was written "in the conjunctive: no action on payment or performance bonds required by OCGA § 36-82-101 (public works contracts) may be instituted 'after one year from the completion of the contract *and* the acceptance of the . . . public work by the proper public authorities.' " (Emphasis in original.) *U. S. Fidelity &c. Co. v. Rome Concrete Pipe Co.*, 256 Ga. 661, 662-663 (353 SE2d 15) (1987). In *Rome Concrete*, the Supreme Court determined the appropriate starting date for the running of the limitation period, holding "the one-year statute of limitation contained in OCGA § 36-82-105 commences at the completion of the actual construction work and acceptance thereof by the public authority." (Footnote omitted.) Id. at 662.

Here, the complaint was filed on February 20, 2001. The trial court found suit was untimely. In so doing, the court observed, "[d]espite conclusory language in Plaintiff's affidavits, the record clearly reflects that Trend had completed the contract work and had entered the punch-list phase as early as June of 1999, *one year and seven months before Southern Electric filed suit.*" (Emphasis in original.)

As to when the work was completed and accepted, Trend and Southern offered conflicting evidence. Davis, in one of his affidavits, testified, "Trend received its last payment on the Project on September 29, 1999." But, the record shows a letter from Davis requesting final payment on September 22, 2000. Trend also argued that "the project was substantially complete and accepted by the owner" when the building was fully occupied and in use.[3] Trend's latter argument overlooks the "Occupancy Requirements" section in its contract which required "Full Owner Occupancy" and expressly provided that "[t]he Owner will occupy the site and existing building during the entire construction period," and required Trend to "[p]erform the Work so as not to interfere with the Owner's operations." Compare *Dixie Roof Decks v. Borggren/Dickson Constr.*, 195 Ga. App. 881, 882 (395 SE2d 19) (1990) (either dedication of high school building or building's full occupation and use triggered start of one-year statute of limitation).

Southern presented evidence of a much later date. The project architect, Todd Cook, testified, "Trend did not complete the work on the Project which was required by its contract until late September of 2000." Cook testified that as late as April 2000, "[s]ignificant electri-

---

[3] The payment bond makes no mention of "substantial completion" but did foreclose suits "instituted on this bond after one year from the date of the final certificate of the Architect." The project architect testified that he never issued a final certificate; but, would not in any case have executed the certificate until September 2000.

cal work remained in the Lecture Hall. I warned in the letter [of April 19, 2000,] that the Owner might complete the Contract itself, because the work had not yet been completed by Trend." Cook added, "These electrical items of incomplete work were significant things that the Owner could not accept unless they were completed and which we, as Owner's representatives, could not just let Trend 'forget.' As an example, fire sealants at all floor openings in the second floor electrical room had to be provided."

It appears, therefore, from the architect's affidavit, that there was evidence that Trend had not completed its original contract work at least as of April 2000, which would make the suit timely filed. In light of this evidence, an issue of fact remains as to when the work was completed and accepted and the trial court erred in granting summary judgment to Trend on these grounds.

*Judgment reversed. Phipps and Mikell, JJ., concur.*

DECIDED FEBRUARY 14, 2003.

*Owen, Gleaton, Egan, Jones & Sweeney, Maurice M. Egan, Jr., Eric A. Kane*, for appellant.

*Talley & Darden, David P. Darden, Hendrick, Phillips, Schemm & Salzman, Martin R. Salzman, Neil L. Wilcove*, for appellees.