A98A1913. LAFFODAY v. WINN DIXIE ATLANTA, INC.
(510 SE2d 598)

ANDREWS, Chief Judge.

While working for Gibson Greeting Cards in a Winn Dixie grocery store, Jennifer Laffoday slipped and fell in the produce preparation area as a result of water on the floor. Laffoday sued Winn Dixie Atlanta, Inc. (Winn Dixie) for injuries she sustained in her fall, claiming that the water on the floor was a dangerous condition and that Winn Dixie failed to keep the premises safe. The trial court granted summary judgment in favor of Winn Dixie based upon its finding that Laffoday "had equal or greater knowledge of the specific hazard which resulted in her fall." For reasons which follow, we reverse.

"[I]n order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier."

---

[5] *Milliken v. Meyer*, 311 U. S. 457, 463 (61 SC 339, 85 LE 278) (1940).

*Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (493 SE2d 403) (1997). Thus, the true ground of liability in a slip-and-fall action remains the owner/occupier's superior knowledge of the hazard. *McCoy v. West Building Materials &c.*, 232 Ga. App. 620, 621 (502 SE2d 559) (1998).

In her deposition, Laffoday testified that at the time of her fall, she had been maintaining the card section of the Winn Dixie store for over one year on behalf of her employer, Gibson Greeting Cards. She normally went to this Winn Dixie store approximately twice a week; however, she was going around four times a week at the time of her fall due to the holiday season. Laffoday's duties included obtaining overstocked greeting cards from a storage area in the rear of the store. She accessed this storage area by walking through the produce preparation area located behind double doors in the rear of the store.

Laffoday testified that she fell in the produce preparation area while responding to a page over the intercom from the store manager requesting that the Gibson representative report to the front of the store. This page "startled" Laffoday because she had never been paged before. She was also "concerned about a customer perhaps in the front needing attention, being dissatisfied." As she took her first step to respond to the page, her left foot slipped out from under her and she fell. To the best of her recollection, she was looking towards the door at the time she fell. Laffoday testified that she slipped on water because her clothing was wet after her fall and she saw water on the floor.

Laffoday admitted that the produce department manager, Thomas Rich, warned her before her fall to be careful about water in the produce preparation area. She also admitted she "was aware that this area could collect water" before her fall. She further acknowledged that she knew frozen produce was prepped in this area and that water could leak from those items. Although Laffoday knew there was water in the produce preparation area the day of her fall and before her fall, Laffoday denied that before her fall, she was actually aware of the particular water which caused her to slip.

In a recorded statement taken almost two years after her fall, Laffoday provided a similar account of her fall. "I was walking through the produce area on my way to set up a display. I was paged by the store manager over the intercom. The page startled me. I turned to respond and to walk to the front of the store and as I turned, I slipped in water and fell."

Thomas Rich, the produce department head, also testified by deposition and admitted that he saw a puddle of water in the area where Laffoday fell approximately ten or fifteen minutes before her fall. He immediately instructed an employee to clean it up. Rich testified that he could still see the moisture after the area was dry-mopped, that it was a "little bit" wet and that the linoleum floor was

going to be "a little bit slick" after it had been dry-mopped because the floor could not be completely dried. After Laffoday fell, Rich saw a wet floor sign, which was part of the mop bucket, located approximately three feet from the location of Laffoday's fall. Another wet floor sign was located by the door. Laffoday testified that she did not see a mop bucket with a wet floor warning before her fall.

Although this case was decided by the trial court before our Supreme Court's decision in *Robinson,* "appellate courts must apply the law as it exists at the time of the appellate court's judgment, even though doing so might change the judgment of the trial court which was correct at the time it was rendered." *Sharfuddin v. Drug Emporium,* 230 Ga. App. 679 (1) (498 SE2d 748) (1998).

In this case, the record does not show that Laffoday had knowledge of the hazard which was equal to that of Winn Dixie. Although she knew that water was present on the floor of the produce preparation area before her fall, there is no evidence that she actually knew about the particular wetness which caused her to fall. Winn Dixie, on the other hand, did have actual knowledge of this area because its employee admitted this area was still "a little bit slick" after it was dry-mopped minutes before Laffoday's fall. Thus, the issue to be resolved in this case is whether Laffoday should have seen the wetness before her fall, i.e., did she exercise ordinary care for her own safety?

In *Robinson,* supra, the Supreme Court of Georgia held "that an invitee's failure to exercise ordinary care is not established as a matter of law by the invitee's admission that he did not look at the site on which he placed his foot or that he could have seen the hazard had he visually examined the floor before taking the step which led to his downfall. Rather, the issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence the ordinarily careful person would use in a like situation. We further hold that an invitee presents some evidence of the exercise of reasonable care for personal safety when the invitee explains that something in the control of the owner/occupier and of such a nature that the owner/occupier knew or should have known of its distractive quality caused him not to look to the site of the hazard." *Robinson,* 268 Ga. at 748.

Application of these principles requires us to reverse the grant of summary judgment to Winn Dixie. See *West Lumber Co. v. Beck,* 231 Ga. App. 46 (497 SE2d 647) (1998); *Jones v. Ingles Markets,* 231 Ga. App. 338, 342 (498 SE2d 365) (1998) (physical precedent only). The evidence in this case is not "plain, palpable, and undisputed," within the meaning of *Robinson,* supra at 748, that Laffoday failed to exercise ordinary care for her own safety.

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

DECIDED DECEMBER 22, 1998.

*Mullman & Associates, Roy S. Mullman*, for appellant.
*Fain, Major & Wiley, Gene A. Major, Darryl G. Haynes*, for appellee.