A99A1844. ETHRIDGE et al. v. DAVIS et al.
(530 SE2d 477)

ANDREWS, Presiding Judge.

Sanford and Charles Ethridge, owners of a partnership d/b/a Colonnade Apartments, appeal the denial of their motion for sum-

mary judgment in this premises liability suit by Ricky Davis and his wife.[1] A certificate of immediate review was granted by the trial court, and this Court granted the application for interlocutory appeal. Because Davis had equal knowledge of the defect in the premises which caused his injury, we reverse.

This Court reviews de novo a trial court's grant or denial of summary judgment. *Jackson v. Post Properties*, 236 Ga. App. 701 (513 SE2d 259) (1999).

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . [T]he burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in favor of Davis, the evidence was that he, his wife and their daughter moved into Colonnade Apartments in 1994. They had lived in Unit 208, a townhouse, for at least a year prior to Davis' fall on June 17, 1996. Sometime shortly after they moved in, they noticed a leak in the ceiling of the kitchen around the light fixture. The bathroom was located above the kitchen, and the leak apparently originated from the bathroom pipes in the walls or ceiling.

The leak was reported to Altman, the resident manager, six or seven months prior to the fall, and notice was also given to the maintenance man. Additionally, after the leak had not been repaired, Sanford Ethridge came to the apartment and was personally shown the leak. Davis deposed that they complained about the problem "off and on for almost a year."

Davis said the leak was worse when the shower or tub was being

---

[1] Mrs. Davis' claim for loss of consortium is derivative of Mr. Davis' claim and will not be further separately addressed.

used in the bathroom but that "[i]t practically leaked all the time." The water would puddle in the light fixture in the kitchen ceiling. When so much water accumulated, "the [S]heetrock got weak and wet, started falling out of the ceiling. Then first it started dripping water, and at other times it would pour water." Davis said he knew the leak was a problem because he complained about it constantly.

Mrs. Davis repeatedly cleaned up the water from the leak, which was hard to see on the floor because it was white linoleum. As she deposed, "I know I mopped and got water up every day some time during the day for . . . a year." Davis also stated that the water would be hard to see on the floor due to the white linoleum.

Although the leak was persistent, its timing would vary based on the rate of accumulation of the water. Mrs. Davis deposed that it leaked "different things different days." Davis stated that "[y]ou never knew . . . it depends on how much water collected before it would — how bad it would pour out or leak or drip out."

On June 17, 1996, Mrs. Davis cleaned the kitchen floor that morning and had been in the kitchen three times thereafter and had not noticed more leaking. Around 5:00 p.m., Davis went into the kitchen to retrieve asthma medicine for a child for whom Mrs. Davis provided child care.

Davis, who had two prior neck and back surgeries as a result of previous job accidents, acknowledged that he did not look up at the fixture and surrounding Sheetrock as he walked into the kitchen, nor did he look at the floor. As he deposed,

> I knew there was a problem every day, but . . . it wasn't something that was constantly on my mind, no. I got up and walked in the kitchen to get her medicine, that's what was on my mind. . . . Maybe I should have looked up, yes, you know, because I knew there was a problem, but it wasn't on my mind at the time, because it shouldn't be something I would constantly think about or have to worry about anyway.

Even though the landlord is under a statutory duty to keep the premises in repair, OCGA §§ 44-7-13 and 44-7-14, he is not an ensurer of the tenant's safety.

> "Even though the condition of the premises may be hazardous and the landlord negligent, he may not be liable for injury where the (tenant) had equal or superior knowledge of the alleged defect. If a (tenant) knows of a defect, '(he) must use all of (his) senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things

that might cause hurt to (him).' [Cits.]" *Hall v. Thompson*, 193 Ga. App. 574 (388 SE2d 381) (1989). "Although the issue of the plaintiff's exercise of due diligence for his own safety is ordinarily reserved for the jury, it may be summarily adjudicated where the plaintiff's knowledge of the risk is clear and palpable." [Cit.]

*Wells v. C & S Trust Co.*, 199 Ga. App. 31-32 (403 SE2d 826) (1991).[2]

In *Wells*, the plaintiff, having notified the landlord of the lack of illumination in a stairwell, nonetheless attempted to use the stairwell in the dark when there was another route available. See *Culberson v. Lanier*, 216 Ga. App. 686 (455 SE2d 385) (1995) (invitee fell down defective stairwell which did not comply with the local building code; summary judgment for landlord).

Davis argues that *Laffoday v. Winn Dixie Atlanta*, 235 Ga. App. 832 (510 SE2d 598) (1998) precludes summary judgment to the defendants because it is factually similar to the situation here. In that case, Laffoday was the greeting card representative for the store involved and had been in and out of the store for a year. On the day of her fall, she had been warned by the produce manager that the produce preparation area could be wet; she knew there was water in that area the day of her fall and before her fall; and there was a wet floor sign near the place of her fall. There, summary judgment for defendant was precluded because Laffoday presented evidence that, immediately before her fall, the store manager had paged her to the front of the store, which startled her. This created a factual issue for jury resolution because the invitee explained that there was " 'something in the control of the owner/occupier and of such a nature that the owner/occupier knew or should have known of its distractive quality [which] caused [her] not to look to the site of the hazard.' *Robinson* [*v. Kroger Co.*], 268 Ga. [735, 748 (493 SE2d 403) [(1997)]." Id. at 834.

Here, while there had been no repair of the problem leak, nothing done by the landlord prior to Davis' fall distracted him from the hazard created by the dripping water. Rather, knowing that the leak was persistent but unpredictable and that he would not be able to see water on the floor due to the white linoleum, Davis walked directly into the area where the water fell without looking at either the ceiling or the floor. Here, as in *Hall v. Thompson*, supra at 575, Davis

---

[2] Although this case predates *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997), these principles were reaffirmed in *Robinson*, supra at 740-741. See *Pierce v. Wendy's Int.*, 233 Ga. App. 227, 230 (2) (504 SE2d 14) (1998); *Berman v. Kmart*, 232 Ga. App. 219, 220 (3) (501 SE2d 580) (1998). Also, *Colquitt v. Rowland*, 265 Ga. 905, 907 (463 SE2d 491) (1995) held that OCGA § 44-7-13 imposes contractual, not tort, liability.

either chose not to be or forgot to be careful of the known specific danger. Davis argues that *Hall* involved a rotten plank which was always present and therefore distinguishes the present situation where the water was not always present. That the water's presence was intermittent, however, would mandate more, rather than less, care from the tenant who was aware that, if present, the water would be difficult to see.

Therefore, under these plain, palpable and undisputed facts, the defendants were entitled to summary judgment. See *Hannah v. Hampton Auto Parts*, 234 Ga. App. 392, 394 (506 SE2d 910) (1998) (owner entitled to summary judgment where invitee had repeatedly negotiated steps prior to fall); *Beman v. Kmart*, 232 Ga. App. 219, 220 (3) (501 SE2d 580) (1998) (invitee's mistake in placing hand in door jamb entitled owner to summary judgment); *Anderson v. Reynolds*, 232 Ga. App. 868, 870 (502 SE2d 782) (1998) (invitee was as aware as owner of rock wall upon which she stood which was wet from watering flowers; summary judgment for owner).

*Judgment reversed. Ruffin and Ellington, JJ., concur.*

DECIDED MARCH 2, 2000 —
RECONSIDERATION DENIED MARCH 22, 2000 — 

*Jones, Cork & Miller, W. Kerry Howell*, for appellants.
*F. Robert Raley*, for appellees.