A02A0497. WARBERG et al. v. SAINT LOUIS BREAD COMPANY, INC.
(565 SE2d 561)

RUFFIN, Judge.

Mary Warberg and her husband sued Saint Louis Bread Company, Inc. ("the Bread Company") after Mrs. Warberg slipped and fell at the Bread Company's bakery in Lenox Square Shopping Mall. The trial court awarded the Bread Company summary judgment, and the Warbergs appeal. For reasons that follow, we affirm.

Summary judgment is appropriate when no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law.[1] On appeal from a grant of summary judgment, we apply a de novo standard of review and "view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[2]

Viewed in this light, the record shows that Mrs. Warberg and her husband visited Lenox Square on the morning of December 5, 1998. While her husband shopped for a Christmas gift at another mall store, Mrs. Warberg went to the Bread Company to purchase bagels. As she walked to the bakery counter to place her order, she stepped

---

[1] See *Matthews v. The Varsity,* 248 Ga. App. 512 (546 SE2d 878) (2001).
[2] Id.

on a plastic "wet floor" sign that was folded over and lying flat on the floor, rather than in its proper upright position. According to Mrs. Warberg, the sign "scooted" out from under her, her foot slid forward with the sign, and she fell on her back. Mrs. Warberg did not see the sign before she stepped on it, but agreed that she could have seen it if she had looked down. She also testified that the floor was dry at the time of her fall.

Lurethia Johnson was working behind the bakery counter taking orders and operating the cash register when Mrs. Warberg fell. Johnson testified that she was extremely busy that day. She did not see Mrs. Warberg slip, but heard another customer mention the fall, looked up, and saw Mrs. Warberg on the floor with the flattened "wet floor" sign next to her. Johnson had not previously seen the "wet floor" sign standing erect or lying flat on the floor in the area where Mrs. Warberg slipped. After the fall, Johnson left her work station, reported the incident to the store's general manager, Jeff Thomas, and then resumed her duties behind the counter.

According to Thomas, a few minutes before Johnson told him about Mrs. Warberg's fall, he checked the area around the bakery for debris on the floor and general cleanliness. He did not see any debris, but he noticed a "wet floor" sign standing upright next to a wall. The floor around the sign was dry. Thomas did not remove the sign or ask another employee to remove it, though Bread Company policies required the removal of such signs once the floor dried. He further testified that upright "wet floor" signs often are knocked flat on the floor.

Thoba Zulu was the Bread Company employee responsible for keeping the dining room and public access areas clean on December 5, 1998. His duties included mopping spills, putting out "wet floor" signs, and removing those signs when the floor dried. Zulu recalled that customers occasionally knocked "wet floor" signs down, and he would stand them back up or, if the floor had dried, remove them. On December 5, 1998, he inspected the dining room and public common areas every 15 to 20 minutes to ensure that the floor was clean.

To succeed in their premises liability claim, the Warbergs must prove "(1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier."[3] Because the Warbergs failed to present evidence that the Bread Company knew about the hazard, we affirm the trial court's grant of summary judgment.

---

[3] *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997).

1. *Actual Knowledge.* As evidence of the Bread Company's actual knowledge, the Warbergs point out that Thomas saw the "wet floor" sign standing upright on a dry floor in the bakery area shortly before Mrs. Warberg fell.[4] According to the Warbergs, because Thomas knew that such signs are commonly knocked down, but did not remove the sign, the Bread Company had "actual knowledge . . . of the hazardous condition which resulted in Mrs. Warberg's fall."

We disagree. The injury-causing hazard in this case was the "wet floor" sign lying flat on the Bread Company's floor, not an upright caution sign. We reject the Warbergs' assertion that Thomas' knowledge of the properly positioned sign gave the Bread Company actual knowledge of this hazard simply because the sign *might* be knocked over.[5] Furthermore, although a Bread Company employee presumably placed the "wet floor" sign in the bakery, the record contains no evidence that the Bread Company authorized the hazardous condition presented by the collapsed sign.[6] On the contrary, Zulu testified that he fixed any fallen signs that he found on his regular inspections of the Bread Company's public areas.

The Warbergs have pointed to no evidence that the Bread Company had actual knowledge of the collapsed sign — the hazard at issue — prior to Mrs. Warberg's fall. Accordingly, the trial court properly found that the Bread Company lacked actual knowledge of the injury-causing hazard.

2. *Constructive Knowledge.* The record also lacks evidence that the Bread Company had constructive knowledge of the collapsed sign. A claimant can establish constructive knowledge through two methods:

> (1) by evidence that an employee of [the proprietor] was in the immediate vicinity and easily could have seen and removed the hazard or (2) that the [hazard] had been on the floor long enough that (a) it would have been discovered if [the proprietor] had exercised reasonable care in inspecting its premises and (b) it would have been removed if [the proprietor] exercised reasonable care in cleaning.[7]

As discussed below, the Warbergs have not raised a question of fact under either method.

---

[4] The parties apparently agree that Mrs. Warberg slipped on the same sign that Thomas saw during his inspection.

[5] See id. (plaintiff must show that defendant had knowledge of *the hazard*).

[6] See, e.g., *Kmart Corp. v. Morris*, 251 Ga. App. 753, 757 (2) (555 SE2d 106) (2001) ("[U]nder Georgia law, a proprietor is presumed to have knowledge of a condition it authorizes, such as an automatic door.").

[7] *Matthews*, supra at 513.

(a) The Warbergs argue that two Bread Company employees, Thomas and Johnson, were in the immediate area and could have seen the hazard. According to the Warbergs, Thomas walked through the bakery area, saw the upright "wet floor" sign shortly before Mrs. Warberg fell, knew the floor was dry, and could have removed the sign. Again, however, the upright "wet floor" sign did not cause the injury in this case. The *collapsed* "wet floor" sign was the hazard, and the Warbergs have presented no evidence that Thomas was in the immediate vicinity of or could have easily seen the flattened sign on which Mrs. Warberg fell.

The Warbergs also claim that Johnson, who was working behind the bakery counter, was in the immediate vicinity of the collapsed sign and could have seen it. Johnson testified that she did not see the sign before Mrs. Warberg slipped and did not witness the fall. We recognize that, from her work station, Johnson saw the flattened sign next to Mrs. Warberg after the fall. Nothing in the record, however, raises a question of fact as to whether she could have easily seen this hazard and taken action to correct it *before* Mrs. Warberg slipped.

As we have found,

> there never has been a rule in this state that liability can be shown by nothing more than the fact that the defendant's employee was in the immediate area of the hazardous substance. In every case, the rule that states that proposition also requires a finding that the defendant's employee had an opportunity to discover and remove the hazard, which can only be shown by evidence that the hazard existed for a length of time sufficient for the defendant to discover the hazard and remove it.[8]

Mrs. Warberg does not know how long the "wet floor" sign was flat on the floor before she slipped on it. And the Warbergs admit that shortly before Mrs. Warberg fell, Thomas walked through the area and saw the "wet floor" sign standing erect. Specifically, Thomas testified that just a few minutes prior to learning about the fall, he inspected the area and noticed nothing on the floor, other than the upright sign. The record further shows that, when Mrs. Warberg entered the bakery area, Johnson was taking customer orders and operating the cash register behind the counter. Even Mrs. Warberg agreed that "there [were] a lot of people in and around the Bread Company that morning" and that a line had formed at the bakery counter.

---

[8] (Punctuation omitted.) *Deloach v. Food Lion*, 228 Ga. App. 393, 395 (491 SE2d 845) (1997).

Under these circumstances, we cannot find that the evidence raises a question of fact as to whether Johnson could have easily seen the collapsed sign and removed it before Mrs. Warberg slipped. At most, the sign was flat for only a few minutes before her fall. Furthermore, the evidence gives no indication that, during this short time period and while serving a line of customers, Johnson was in a position to see and correct the hazard.[9]

(b) The Warbergs also argue that the Bread Company did not employ reasonable inspection procedures on December 5, 1998. Yet, the record shows — and the Warbergs concede — that Thomas inspected the area where Mrs. Warberg fell just a few minutes before she slipped. During that inspection, he did not see a collapsed "wet floor" sign on the floor; he saw only an upright sign. Thus, the Bread Company offered evidence that the hazardous condition was not present shortly before Mrs. Warberg's fall.

"In cases where a proprietor has shown that an inspection occurred within a brief period prior to an invitee's fall, we have held that the inspection procedure was adequate as a matter of law."[10] Accordingly, the Warbergs have not raised a question of fact regarding the reasonableness of the Bread Company's inspection procedures.[11]

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED MAY 13, 2002.

*Friedman, Dever & Merlin, Hayes M. Dever, Maureen M. Councill, Alison K. Arce,* for appellants.
*Carlock, Copeland, Semler & Stair, Wayne D. McGrew III, Stacy M. Blackman, Michael D. Johnson,* for appellee.

---

[9] See id.; *Drake v. Kroger Co.,* 213 Ga. App. 72, 74 (1) (443 SE2d 698) (1994); see also *Lovins v. Kroger Co.,* 236 Ga. App. 585, 586 (1) (b) (i) (512 SE2d 2) (1999) (constructive knowledge not imputed where employees not in a position to see the hazard).

[10] *Matthews,* supra at 514 (2).

[11] See id. We again reject the Warbergs' suggestion that the upright "wet floor" sign was the hazard in this case. Thomas' failure to remove the erect sign from the dry floor did not give the Bread Company constructive knowledge of the flattened sign or raise a factual question as to the reasonableness of his inspection.