## A02A2120. FLORES v. STRICKLAND.
### (577 SE2d 41)

PHIPPS, Judge.

Alleging that he slipped and fell on the outside stairs adjacent to his apartment, Hemilo Flores sued his landlord, Thomas P. Strickland d/b/a Raintree Properties (Raintree), for negligence. After considering Flores's deposition and other evidence, the trial court decided that Flores had equal or superior knowledge of the purported hazard and awarded summary judgment to Raintree. Although Flores disputes this finding and others, we find no error and affirm.

Flores began leasing an apartment from Raintree in early November, and about ten days later, Flores allegedly fell "while descending the stairwell adjacent to his apartment." Flores claimed that the stairwell "was covered with leaves and other debris." Flores alleged that Raintree knew or should have known the area was unsafe for tenants and failed to correct the unsafe condition.

In seeking summary judgment, Raintree argued that Flores's claim was barred by the fact that Flores had equal knowledge of the allegedly defective condition, i.e., the accumulation of autumn leaves on the outside stairs. The trial court agreed. Finding that Flores had equal or superior knowledge of the purported hazard, the trial court determined that Raintree was entitled to judgment as a matter of law.

In considering the grant of a motion for summary judgment, this court conducts a de novo review to determine whether the trial court properly found the absence of material issues of fact.[1] In conducting that review, we consider the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant.[2]

Even when so considered, the evidence indisputably shows that Flores knew that leaves were being blown onto the iron stairs outside

---

[1] *Moore v. Food Assoc.,* 210 Ga. App. 780, 781 (437 SE2d 832) (1993).
[2] *Davis v. Rich's Dept. Stores,* 248 Ga. App. 116 (545 SE2d 661) (2001).

his north Georgia apartment on that autumn day. Flores knew that a deciduous tree located directly behind his apartment was scattering dry leaves. As Flores acknowledged, "[t]here's a tree that blew a lot of leaf [sic]. You know, that time, it was a lot of leaf [sic] that was falling, you know, when you go from summer to the winter." When specifically asked how many leaves were on the particular step on which he slipped, Flores expressed uncertainty. When pressed, "[d]id you slip on one leaf or two leaves or three leaves or do you know?" Flores answered, "I don't know how many, how many leaf [sic], but I feel that I slipped because of the leaf [sic] or the water that was there because it was kind of damp." Flores described the weather as cool and damp and remembered that it had not rained earlier in the day. Flores testified that his fall had occurred at approximately 7:00 p.m. on a Sunday while it was still somewhat light outside.

By his own calculation, Flores had used these stairs an average of ten or eleven times per day without any trouble. Flores testified that on the day of his fall, he had used these same stairs four or five times earlier without incident. He conceded that during his earlier trips up and down the stairs he had not slipped. His wife and their young son also had traversed the same stairs that day without any problem. Flores did testify, however, that on an unspecified date prior to his fall, he had seen his wife either slip, stumble, or step the wrong way. He recounted that "she slipped just a little but nothing happened. She just grabbed [the handrail]." When asked, "[d]id you report the fact that your wife had slipped a little to anyone associated with Raintree Properties?" Flores responded in the negative. He explained, "[I]t was nothing important. It was not dangerous." Flores also testified that he had seen his wife periodically sweeping these same steps with a broom.[3]

According to Flores, on various occasions, he had observed a maintenance crew using a leaf blower to perform clean-up work within the apartment complex. He recalled seeing the crew on the premises "very often." But, Flores admitted that he had not reported the leaves on his outside stairs to Raintree or anyone associated with Raintree. When explicitly asked "if Raintree Properties did anything to cause you to fall?" Flores responded, "[r]eally it was an accident that it could not be expected."

1. Flores contends that the trial court erred in granting summary judgment on the basis of equal or superior knowledge, and he

---

[3] From a series of photographs included in the record, it appears that the stairs at issue went solely to Flores's apartment and were not part of a common area. The record is not clear that Raintree exercised control over these stairs.

asserts that Raintree breached its statutory duty to keep its premises in repair.[4]

A landlord is not liable for a plaintiff's injuries caused by a dangerous condition when the plaintiff had equal or superior knowledge of the danger and failed to exercise ordinary care to avoid it.[5] When a tenant knows about a defect, "he must use all of his senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to him."[6]

When the incident occurred, Flores had knowledge of the natural accumulation of leaves on the stairs outside his apartment, a result of the wind blowing leaves in that direction.[7] But, Flores offered no evidence that this natural accumulation of leaves had remained on the stairs "for a sufficient period of time that [they] should have been discovered and removed [by Raintree] in a reasonable inspection of the premises."[8] A stiff breeze on that autumn day could have blown numerous leaves from the nearby tree within a relatively short period of time. Under similar facts in *Cleveland v. Snowdrop Properties*,[9] this court held that the defendant could not be held liable for breaching its duty to discover and remove leaves from a brick plaza, where "no evidence shows that the wet leaves remained on the paved area for a sufficient amount of time that they should have been discovered and removed in a reasonable inspection of the premises."[10]

2. Finally, Flores argues that the "necessity rule" should apply here because he did not know about an alternate route to his apartment. Although it is undisputed that another set of stairs led up to his apartment, Flores claims that he did not discover that fact until after he fell and maintains that "nobody showed the door to us before."

"The 'necessity rule' applies in the context of a landlord-tenant relationship where the tenant is required to traverse a known hazard in order to enter or leave his home. [Cit.]"[11] Under that exception, when the dangerous area is a tenant's only access or only safe and reasonable access to his home, the tenant's equal knowledge of the

---

[4] OCGA § 44-7-14 imposes liability upon a landlord for damages that arise from defective construction or the landlord's failure to keep the premises in repair.

[5] *Johnson v. Atlanta Housing Auth.*, 243 Ga. App. 157, 160 (3) (532 SE2d 701) (2000).

[6] (Citation and punctuation omitted.) *Ethridge v. Davis*, 243 Ga. App. 11, 13-14 (530 SE2d 477) (2000).

[7] See *Fisher v. HBS Mgmt.*, 220 Ga. App. 752, 753 (469 SE2d 885) (1996) (plaintiff's recovery precluded by his equal knowledge of the weather conditions and equal knowledge of the parking lot).

[8] *Johnson v. Autozone*, 219 Ga. App. 390, 393 (465 SE2d 463) (1995).

[9] 232 Ga. App. 447 (501 SE2d 546) (1998) (plaintiff slipped on natural accumulation of wet leaves during the fall season).

[10] (Citation and punctuation omitted.) Id. at 449.

[11] *Martin v. Consolidated Stores Corp.*, 248 Ga. App. 812, 814 (547 SE2d 380) (2001).

danger does not excuse the landlord from liability for damages caused by a failure to keep the premises in repair.[12] Thus, the "necessity rule" exception tempers the equal or superior knowledge rule when there is no other means of safe ingress and egress to the leased premises.[13]

But, whether Flores knew about the other set of stairs leading to his apartment is immaterial because Flores has not shown that the stairs that he used routinely constituted a "known hazard."[14] It is undisputed that Flores, his wife, and their son had used these exterior stairs many times without incident, including several times earlier that same day, and no evidence indicates that these steps were inherently unsafe or otherwise in a state of disrepair.[15] In fact, Flores conceded that what occurred was an unexpected accident. No evidence shows that Raintree knew about any problem on the outside stairs or that the purported hazardous condition was present long enough to have been discovered and remedied. In sum, Flores's own evidence indicates that the alleged danger at issue did not constitute a "known hazard" comparable to an unlit stairwell that management knew about and had promised to remedy.[16] Because the "necessity rule" exception is inapplicable to these facts, it cannot save Flores's case. Summary judgment was properly granted to Raintree.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JANUARY 29, 2003.

*Jeffrey S. Denny*, for appellant.
*Downey, Cleveland, Parker & Williams, George L. Welborn*, for appellee.

---

[12] *Carey v. Bradford*, 218 Ga. App. 325, 326 (2) (461 SE2d 290) (1995).
[13] See *Grier v. Jeffco Mgmt. Co.*, 176 Ga. App. 158, 159-160 (335 SE2d 408) (1985).
[14] Compare *Carey*, supra (inoperative lighting created hazardous condition in stairwell).
[15] Compare *Carey*, supra (unlit stairway provided only access to apartment, essentially relegating plaintiff to being a prisoner in his own home).
[16] See *Richardson v. Palmour Court Apts.*, 170 Ga. App. 204, 207 (316 SE2d 770) (1984) (landlord not insulated from liability as a matter of law where tenant had received and relied upon repeated assurances from resident manager that light over stairwell would be repaired).