## A06A1430. THE AUGUSTA COUNTRY CLUB, INC. v. BLAKE.
### (634 SE2d 812)

BLACKBURN, Presiding Judge.

The Augusta Country Club, Inc., appeals a jury award in favor of Linda Blake for personal injuries suffered when she stepped on a magnolia seed pod and fell on the Club's premises. The Club argues

---

[11] 247 Ga. App. 41 (543 SE2d 75) (2000).

[12] Id. at 43.

that the trial court should have directed a verdict in the Club's favor and that the trial court erred in failing to give a requested jury charge. Holding that some evidence supported the verdict and that the requested charge was misleading, we affirm.

Construed in favor of the verdict, *R. O. C. v. Estate of Bryant,*[1] the evidence shows that in November 2000 on a beautiful windless day, Blake was visiting the Club for her first time to participate in a tennis match against members of the Club. Walking on a bricked pathway toward the tennis courts at a few minutes before 9:00 a.m., she passed under a magnolia tree at the point where the pathway ended in two steps that opened onto a patio near the courts. In anticipation of the upcoming match, she focused on the tennis courts in the distance and not on the pathway. Speaking with her teammates, she stopped briefly at the top of the steps and then glanced downward as she descended the two steps. She noticed some magnolia seed pods on the patio generally but none under her feet, and she specifically did not see a pod lying at the base of the second step, since the step's lip obscured her view of that area. When her right foot went over the second step and stepped onto the patio near the step's base, her foot landed on the round seed pod and rolled, causing her to fall and to suffer serious injury.

Blake sued the Club, alleging that the Club negligently failed to maintain a safe walkway. Following the presentation of the evidence at trial, the court denied the Club's motion for a directed verdict. The jury awarded Blake $78,000 in compensatory damages, and the court denied the Club's motion for judgment notwithstanding the verdict or for new trial. This appeal followed.

1. The Club first claims that the court erred in denying its motion for a directed verdict. Specifically, the Club argues that (a) no evidence showed it had knowledge of the hazard, (b) it had no legal duty to discover and to remove a naturally occurring hazard, and (c) Blake failed to exercise ordinary care as a matter of law. We disagree and affirm.

"A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced with all reasonable inferences therefrom demands a particular verdict. On appeal, the standard of review of a trial court's denial of a motion for directed verdict is the 'any evidence' standard." (Citations and punctuation omitted.) *Kroger Co. v. Brooks.*[2]

---

[1] *R. O. C. v. Estate of Bryant,* 279 Ga. App. 652 (1) (632 SE2d 429) (2006).
[2] *Kroger Co. v. Brooks,* 231 Ga. App. 650, 651 (500 SE2d 391) (1998).

*Dumas v. Tripps of N.C.*[3] sets forth the relevant principles of law for premises liability cases:

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe. The owner/occupier is not required to warrant the safety of all persons from all things, but to exercise the diligence toward making the premises safe that a good business person is accustomed to use in such matters. This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises.

(Citations and punctuation omitted.) Id.

*Robinson v. Kroger Co.*[4] addresses these principles in the context of summary adjudications such as a directed verdict:

> In sum, we remind members of the judiciary that the "routine" issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed. We hold that an invitee's failure to exercise ordinary care is not established as a matter of law by the invitee's admission that he did not look at the site on which he placed his foot or that he could have seen the hazard had he visually examined the floor before taking the step which led to his downfall. Rather, the issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence the ordinarily careful person would use in a like situation. . . . Finally, we reaffirm that, in order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard

---

[3] *Dumas v. Tripps of N.C.*, 229 Ga. App. 814, 816 (2) (495 SE2d 129) (1997).

[4] *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997).

despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier.

With these principles as a background, we address each of the Club's arguments.

(a) *The Club had constructive knowledge of the hazard.* Constructive knowledge of a hazard may be shown in at least two ways. First, where evidence shows that the hazard was on the walkway for a sufficient length of time that it would have been discovered and removed had the owner exercised reasonable care in inspecting the premises, see *The Kroger Co. v. Williams*,[5] constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure. *Kauffman v. Eastern Food & Gas.*[6]

> The length of time the substance must remain on the [ground] before the owner should have discovered it and what constitutes a reasonable inspection procedure vary with each case, depending on the nature of the business, the size of the [business], the number of customers, the nature of the dangerous condition, and the [business's] location.

*Davis v. Bruno's Supermarkets.*[7] Second, even if the owner had a reasonable inspection procedure, constructive knowledge may be inferred in these circumstances if evidence shows that the owner failed to follow that inspection procedure. *Kauffman,* supra, 246 Ga. App. at 105. See *Moore v. WVL Restaurant.*[8] Indeed, "when an owner/occupier undertakes to perform a duty, whether voluntarily or as mandated under OCGA § 51-3-1, reasonable care must be exercised to make the premises safe through such acts." *Sutton v. Winn Dixie Stores.*[9]

Here, evidence showed that the Club was keenly aware that its magnolia trees were "a huge maintenance problem" because their leaves and seed pods were "fall[ing] all the time." Indeed, one employee testified that during the autumn, the seed pods "fall like every other minute." The Club tennis director felt that the trees were such a problem that he sought to get rid of the trees, only to be informed by Club members that "you touch the trees and you're gone." To handle the ongoing problem, the tennis director required Club employees to blow off the walkways as part of their duties between 7:00 a.m. and

---

[5] *The Kroger Co. v. Williams,* 274 Ga. App. 177, 178 (617 SE2d 160) (2005).

[6] *Kauffman v. Eastern Food & Gas,* 246 Ga. App. 103, 104-105 (2) (539 SE2d 599) (2000).

[7] *Davis v. Bruno's Supermarkets,* 263 Ga. App. 147, 150 (2) (587 SE2d 279) (2003).

[8] *Moore v. WVL Restaurant,* 255 Ga. App. 762, 763 (566 SE2d 465) (2002).

[9] *Sutton v. Winn Dixie Stores,* 233 Ga. App. 424, 425 (504 SE2d 245) (1998).

9:00 a.m. each morning, with this usually taking place as a final duty between 8:30 a.m. and 9:00 a.m. The tennis director, who usually arrived shortly after 7:00 a.m. each morning, was then supposed to inspect the walkways each morning to ensure that all was done properly. However, evidence showed that these morning inspections were actually done only occasionally and were not done every day. The walkways would not be blown again until noon. Whether this was a reasonable inspection and maintenance schedule in light of the seed pods constantly falling onto the walkways and the other factors was for the jury to resolve.

Even assuming this were a reasonable inspection schedule, evidence showed that not only was no inspection done the morning of the accident, but that the employee responsible for blowing this walkway did not do so that morning. On this particular November morning, the tennis director did not come in to the Club. Rather, he relied on his assistant supervisor to do the inspection. She testified, however, that she did not normally perform such inspections; indeed, on the morning in question, she did not arrive until 8:30 a.m., and she went directly to the tennis shop and performed no inspection prior to the accident.

The employee who was supposed to clear the walkways that morning claimed at trial to have arrived at work before 7:00 a.m. this day, to have cared for the clay tennis courts (which required watering and rolling and sweeping and grooming), to have then blown the walkway in question, and to have told the assistant supervisor that he had blown this walkway that morning in response to her inquiry. However, the evidence contradicted all material elements of his testimony. First, his time card showed that he did not punch in until 7:17 a.m. that day. Second, the assistant supervisor testified that neither before nor after the accident did she learn from or ask this employee whether he had blown the walkways that morning. Third, that morning he was faced with an urgent problem of repairing a burst water pipe, which he and the other maintenance employee had to dig up and inspect. They then had to visit the main maintenance shed to obtain equipment and parts, following which they finished repairing the pipe. This extra work all occurred during the 7:00 a.m. to 9:00 a.m. time frame (shortened by his late arrival), during which he was supposed to have also blown the walks. Fourth, the assistant supervisor testified that no maintenance employee blew the walkways after she arrived at 8:30 a.m., so any such clearing must have taken place earlier, if at all. Fifth, the other tennis patrons arriving that morning testified that the walkway under the magnolia tree in question was full of debris, with lots of branches, leaves, and seed pods littering the area, walkway, patio, and steps. In its appellate

reply brief, the Club concedes that the testimony showed "an over-abundance of 'nature stuff,' such as leaves, branches and pods," which debris was "literally 'all over the steps and patio.' "

From this evidence, the jury could well infer that with his primary supervisor not coming to the Club that day, this employee showed up late to work and therefore felt rushed to complete the normal morning tasks. After grooming the courts, he was faced with the urgent project of repairing the water pipe and did so instead of blowing off the walkway, which during the autumn night had accumulated a substantial amount of debris, including the seed pod that caused Blake's accident. Thus, some evidence showed that the hazard had been there overnight and would have been discovered and removed with some type of morning inspection and maintenance schedule, including the one that was purportedly the Club's policy. However, the Club's inspection and maintenance schedule was not followed that morning.

From this set of circumstances, the jury could conclude that the seed pod had been in position overnight, that the Club had no reasonable inspection procedure, and that even if it did, that procedure was not followed in this case. Accordingly, ample evidence supported a finding that the Club had constructive knowledge of the hazard in question.

(b) *The Club owed a duty to remove falling seed pods from the walkway.* Citing *Porter v. Omni Hotels,*[10] *Flores v. Strickland,*[11] *Cleveland v. Snowdrop Properties,*[12] and *Columbus Doctors Hosp. v. Thompson,*[13] the Club argues next that it owed no duty whatsoever to discover and remove the magnolia seed pods, since these pods accumulated on the property as a naturally occurring condition. In each of these cited cases, however, the plaintiff was shown to be actually or constructively aware of the hazard at issue. See *Kauffman,* supra, 246 Ga. App. at 105 (3); *Dumas,* supra, 229 Ga. App. at 816 (2). As shown below in subsection (c), that is not the case here.

More importantly, the accumulation of a naturally occurring condition "does not negate an owner's duty to exercise ordinary care in inspecting the premises in every circumstance. Ice forming [or seed pods falling] due to inevitable natural forces unaffected by human agency 'does not preclude examination into the question of whether or not the defendant was negligent in failing to take remedial action.' "

---

[10] *Porter v. Omni Hotels,* 260 Ga. App. 24, 25-26 (1) (579 SE2d 68) (2003).

[11] *Flores v. Strickland,* 259 Ga. App. 335, 337 (1) (577 SE2d 41) (2003).

[12] *Cleveland v. Snowdrop Properties,* 232 Ga. App. 447, 448 (501 SE2d 546) (1998).

[13] *Columbus Doctors Hosp. v. Thompson,* 224 Ga. App. 682, 683-684 (482 SE2d 705) (1997).

*Dumas*, supra, 229 Ga. App. at 816 (2), quoting *Fincher v. Fox*.[14] See *Kauffman*, supra, 246 Ga. App. at 105-106 (3); *Wallace v. Nissan of Union City*.[15] As explained in *Phelps v. Consolidated Equities Corp.*,[16] this Court in *Fincher* expressly rejected the minority "Massachusetts Rule" (owner has no duty to remove temporary accumulations caused by nature) in favor of the "Connecticut Rule" (question is whether owner was negligent in failing to take remedial action to remove accumulation). See *Fincher*, supra, 107 Ga. App. at 698 (1). Thus, the primary question here was whether in light of the circumstances, the Club was negligent in failing to take remedial action to remove the accumulated seed pods, of which constant accumulation the Club was keenly aware. Some evidence supported a finding of negligence.

(c) *The evidence did not demand a finding that Blake failed to exercise ordinary care*. As stated in *Robinson*, supra, 268 Ga. at 748 (2) (b), the plaintiff's lack of ordinary care for personal safety is generally not susceptible of summary adjudication but is a question for the jury to resolve. "[T]he issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence the ordinarily careful person would use in a like situation." Id. Evidence from the plaintiff showing "a legitimate reason why she did not discover the hazard" supports a finding of ordinary care. *Brooks*, supra, 231 Ga. App. at 652 (1) (a).

Here, Blake presented evidence that she did not see the particular seed pod that caused her fall inasmuch as it lay at the base of the second step in an area not visible to her from her standing perspective because of the lip of the second step. In addition to being unfamiliar with fallings from magnolia trees, she also denied knowing of the presence of the debris generally other than viewing a few seed pods on the patio as she was descending the steps. "It is a plaintiff's knowledge of the *specific* hazard which precipitates the fall which is determinative, not merely his knowledge of the generally prevailing hazardous conditions or of the hazardous conditions which he observes and avoids." (Punctuation omitted.) *Borders v. Bd. of Trustees &c.*[17] See *Moore*, supra, 255 Ga. App. at 764 (where hazard "may have been difficult to see . . . [,] it cannot be said as a matter of law that [plaintiff] had knowledge of the specific [hazard] upon which he fell"). Accordingly, based on the evidence presented, a directed verdict was not in order.

---

[14] *Fincher v. Fox*, 107 Ga. App. 695, 698 (1) (131 SE2d 651) (1963).

[15] *Wallace v. Nissan of Union City*, 240 Ga. App. 658, 659 (1) (524 SE2d 542) (1999).

[16] *Phelps v. Consolidated Equities Corp.*, 133 Ga. App. 189, 190-191 (1) (210 SE2d 337) (1974).

[17] *Borders v. Bd. of Trustees &c.*, 231 Ga. App. 880, 882 (1) (b) (500 SE2d 362) (1998).

2. The Club argues that the trial court erred in failing to instruct the jury as follows: "A plaintiff is charged with equal knowledge of the risks associated with walking on commonly known and naturally occurring conditions, and a defendant has no duty to discover and remove such conditions." As discussed in Division 1 (b) and (c) above, however, such an instruction would have been misleading. The accumulation of a naturally occurring condition "does not negate an owner's duty to exercise ordinary care in inspecting the premises in every circumstance. Ice forming [or seed pods falling] due to inevitable natural forces unaffected by human agency 'does not preclude examination into the question of whether or not the defendant was negligent in failing to take remedial action.' " *Dumas*, supra, 229 Ga. App. at 816 (2). The trial court did not err in refusing to give the instruction.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED JULY 25, 2006 — ■■■■■■■■■■■

*Swift, Currie, McGhee & Hiers, Charles B. Marsh, Ashley W. Broach,* for appellant.

*William J. Sussman,* for appellee.