A08A0653. BROWN et al. v. AMERICAN MULTI-CINEMA,
INC. et al.
(664 SE2d 838)

ADAMS, Judge.

Nancy Sue Brown and Harry Wayne Brown, Sr., brought suit against American Multi-Cinema, Inc. (AMC), after Nancy Brown tripped and fell in the AMC theater at Southlake Mall in Clayton County. The trial court granted summary judgment in favor of AMC, and the Browns appeal.[1]

In ruling on a motion for summary judgment, we give the opposing party the benefit of all reasonable doubt and "construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. Further, any doubts on the existence of a genuine issue of material fact are resolved against the movant for summary judgment." (Footnotes omitted.) *Beasley v. Northside Hosp.*, 289 Ga. App. 685, 685-686 (658 SE2d 233) (2008). "When this Court reviews the grant or denial of a motion for summary judgment, it conducts a de novo review of the law and the evidence." (Footnote omitted.) Id. at 686.

Viewed in that light, the evidence shows that on or about December 25, 2003, Nancy Brown, her daughter Robin Brown, and other family members were viewing a movie in one of the auditori-

---

[1] The suit also named two AMC managers as defendants, but the trial court's summary judgment order states that the Browns conceded at oral argument that they "should be dismissed" from the lawsuit. This appeal, therefore, addresses only the company's liability.

ums at the AMC theater. While the movie was playing, AMC employee Jorge Quinones noticed a drink spilled on the carpet outside the Browns' auditorium. Quinones picked up the ice, threw away the cup and mopped up the spilled liquid with Dyna-Wipes, which are big, thick, absorbent cotton wipes. He reduced the wet area to less than one foot in circumference, and then placed a folding, yellow plastic "wet floor" sign in an upright position directly above the wet area. Quinones placed the sign about 12 to 17 steps, which translates to approximately 19 to 26 feet, from the entrance to the auditorium.

Approximately five minutes later, the moviegoers emerged from the auditorium. Nancy Brown, who was in the middle of the exiting crowd, tripped when her toe caught in the open handle of the "wet floor" sign, which had collapsed and was lying flat on the floor. It is undisputed that Nancy Brown did not slip on the wet area, but tripped on the sign. She said she did not see the sign on the floor because of all the people around her. A man "just ahead" of the Browns stopped to help and told them that he had tripped over the sign moments before, but had not been able to get back to remove the sign. As a result of the fall, Nancy Brown dislocated her toe, broke bones in her foot and re-injured her back. At some point, Robin Brown noticed three ushers standing near the door where the crowd exited the auditorium.

The evidence demonstrated that Quinones was following AMC policy in cleaning the spill and placing the sign on the wet carpet, even though the spill was in an area designated for pedestrian traffic and the company would not endorse putting other objects — such as a trash can, a mop and bucket, or a sign without a warning — in the path of its patrons. This is because the "wet floor" sign is designed to warn patrons of a hazard in their path. AMC acknowledges that the "wet floor" signs are most effective when visible and the company was aware that people would be crowding out of the auditorium after a movie, possibly obscuring the sign. Despite this, the company had no specific policy requiring AMC employees to monitor the warning sign once it was in place. The company did, however, have a general requirement that its employees, including ushers, monitor the areas around them for potential hazards. Under this policy, AMC would have required an employee who observed a sign lying flat to put it back in an upright position. But there is no evidence that the employees at the AMC theater saw the collapsed sign that day, or, in fact, had ever observed a "wet floor" sign lying flat on the floor. The two employees deposed in the litigation both denied ever seeing a sign fall out of its upright position.

Nevertheless, the Browns provided expert testimony that the "wet floor" signs used by AMC "easily collapse when contacted by

pedestrian traffic." The expert stated that it was "standard industry knowledge among retail establishments" that placing such signs in the path of a crowd creates a tripping hazard and should be avoided. He asserted that Quinones should have dried the wet area completely, instead of leaving it wet and placing a sign in the crowd's path. In the alternative, he opines AMC should have employed a sturdier method of warning its patrons of the hazard.

> An invitee must prove two essential elements in order to recover for injuries sustained in a slip and fall: (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier.

(Punctuation and footnote omitted.) *Petrosky v. Embry Crossing Condo. Assn.*, 284 Ga. App. 354 (1) (643 SE2d 855) (2007).

This Court previously applied these requirements to a situation in which a store patron tripped and fell on a collapsed "wet floor" sign in *Warberg v. Saint Louis Bread Co.*, 255 Ga. App. 352 (565 SE2d 561) (2002). There, the patron entered the store from a mall entrance and was heading toward the bakery counter when she stepped on a collapsed "wet floor" sign. The sign scooted out from under the patron causing her to fall. This Court found that the hazard at issue was the collapsed sign lying flat on the floor. The Court rejected the Warbergs' assertion that an employee's "knowledge of the properly positioned sign gave the Bread Company actual knowledge of this hazard because the sign *might* be knocked down," and instead concluded that the store had no actual knowledge of the hazard. (Emphasis in original.) Id. at 354 (1). The Court reached this conclusion despite the fact that store employees previously had observed signs being knocked flat by pedestrian traffic. Id. at 353.

The *Warberg* opinion also found no issue of fact on the issue of constructive knowledge, noting that a plaintiff may show such knowledge in two ways:

> (1) by evidence that an employee of the proprietor was in the immediate vicinity and easily could have seen and removed the hazard or (2) that the hazard had been on the floor long enough that (a) it would have been discovered if the proprietor had exercised reasonable care in inspecting its premises and (b) it would have been removed if the proprietor exercised reasonable care in cleaning.

(Punctuation and footnote omitted.) Id. at 354 (2). Considering the

first of these methods, the Court found that no factual issue existed as to whether the nearest store employees could have seen the hazard and removed it, even though one of them saw the collapsed sign from her station behind the bakery counter after the fall. The Court noted that the employee was occupied with her duties behind the counter and even the plaintiff admitted that there were a lot of people in the store at the time. In fact, a line had formed at the bakery counter. Id. at 355 (2) (a). The Court also found that no issue existed as to the store's inspections under the second method. The area had been inspected a few minutes before the fall, and the inspecting employee saw the sign sitting upright. Thus, there was no evidence that the hazard even existed until shortly before the fall. Id. at 356 (2) (b).

Relying upon *Warberg*, the trial court in this case found that the "wet floor" sign had been properly placed by Quinones, and there was no evidence that anyone, including AMC, had actual notice of the collapsed sign. Further, the court found no factual dispute that AMC's employees received proper training in treating spills, but in any event found the issue to be irrelevant because Nancy Brown tripped on a collapsed sign and not the upright sign as placed by Quinones.

The Browns contend, however, that the trial court erred in holding as a matter of law (1) that AMC "properly positioned" the "wet floor" sign in the path of a crowd of exiting AMC patrons and (2) that AMC was not on constructive notice of the hazard created by placing such signs in the path of the exiting crowd. In support of these arguments, the Browns rely upon this Court's opinion in *Freeman v. Wal-Mart Stores*, 281 Ga. App. 132 (635 SE2d 399) (2006). The injury in that case occurred when a customer tripped over a rolled-up mat that fell across an aisle. A short time earlier, a Wal-Mart employee had observed the mat leaning against a produce shelf, but there was no evidence that any employee was aware the mat had fallen. Id. The Court in *Freeman* found that a jury issue existed as to whether the risk presented by the rolled-up mat was foreseeable to Wal-Mart. In reaching this conclusion, the Court distinguished the facts in the *Warberg* case

> because in *Warberg* the object over which the customer tripped had been "properly positioned" by the business and, as such, was clearly not a hazard but was intended to prevent a hazard. We did not require the business to anticipate that an item which, by its very nature as a warning device, must be placed in a walkway, could be knocked down and create a hazard. In contrast, the rolled-up mat was not "properly positioned" or otherwise

serving its intended purpose while leaning against a produce shelf; it was supposed to be spread out on the floor.

(Footnote omitted.) *Freeman v. Wal-Mart Stores*, 281 Ga. App. at 135 (2).

The Browns contend that the "wet floor" sign in this case is more akin to the improperly positioned mat in the *Freeman* case than to the properly positioned warning sign in *Warberg* because the act of placing the sign in the path of the exiting crowd created a hazard. Thus, they contend that an issue of fact exists as to whether AMC should have foreseen the risk of placing the "wet floor" sign in the crowd's path.

We agree that the facts before us are distinguishable from the facts in *Warberg* and that issues of fact preclude summary judgment in this case. The *Warberg* opinion held that a properly positioned warning sign does not put a proprietor on notice of a hazard simply because the proprietor is aware that the sign might fall. Although the sign in *Warberg* was placed in an area to be traversed by the store's patrons as they went in and out of the bakery, there was no question that the sign, when upright, served its proper function as a warning. Thus the Court concluded, as a matter of law, that the sign was properly positioned. *Warberg v. Saint Louis Bread Co.*, 255 Ga. App. at 354 (1). But we do not read *Warberg* as holding that any "wet floor" sign is properly positioned as a matter of law simply by being placed in an upright position over a hazard, wherever that hazard may be.

The sign in this case was placed in an area that AMC knew its customers would traverse en masse at an appointed time. Under those circumstances, an issue arises as to whether the sign could serve its proper function or whether the presence of the crowd would obscure the sign, rendering it ineffective as a warning device. Accordingly, we agree that the trial court erred in finding as a matter of law that the sign was "properly positioned."

If the jury determined that the sign was not serving its proper purpose as a warning device, it could find that the sign was like any other object placed in the path of the theater's patrons. "Although a merchant has the right to place certain articles in the aisles of his store, nevertheless, the merchant must so place such articles so as not to threaten danger to those using the aisle and so that they are in full sight and within the observation of everyone." (Citation and punctuation omitted.) *Stone v. Winn Dixie Stores*, 212 Ga. App. 291, 292 (442 SE2d 1) (1994). Accordingly, an issue of fact exists as to whether AMC should have foreseen that placing the sign in the path of the exiting crowd might create a tripping hazard. As the Court in *Freeman* noted

> [w]ith reference to foreseeability of injury, the correct rule is that in order for a party to be held liable for negligence, it is not necessary that he should have been able to anticipate the particular consequences which ensued. It is sufficient if, in ordinary prudence, he might have foreseen that some injury would result from his act or omission, and that consequences of a generally injurious nature might result.

*Freeman v. Wal-Mart Stores*, 281 Ga. App. at 136.

Accordingly, we reverse the grant of summary judgment to AMC. *Freeman v. Wal-Mart Stores*, 281 Ga. App. at 136. Cf. *Grovner v. Winn Dixie Stores*, 218 Ga. App. 495 (462 SE2d 427) (1995) (evidence that customer's view of "wet floor" warnings may have been blocked by the accumulation of shipping boxes in the aisles created jury issue as to customer's exercise of ordinary care); *Willis v. Byrd*, 116 Ga. App. 555, 560 (3) (158 SE2d 458) (1967) (allegations that proprietor allowed crowd to obscure presence of ramp presented jury issue).

*Judgment reversed. Smith, P. J., and Mikell, J., concur.*

DECIDED JULY 7, 2008 — ▉▉▉▉▉▉▉

*A. Thomas Stubbs*, for appellants.
*Gray, Rust, St. Amand, Moffett & Brieske, Christopher M. Ziegler*, for appellees.