A09A1673. KIM v. MUNICIPAL MARKET COMPANY.

(693 SE2d 123)

PHIPPS, Judge.

Hyun Kim appeals from the trial court's grant of summary judgment to Municipal Market Company (Municipal), her landlord at the Sweet Auburn Curb Market in Atlanta, on her claim for negligence following her fall on a wet floor sign lying in a puddle of

water in the common area of the market. Finding no error, we affirm.

Kim leased space from Municipal in which she and her then-husband had conducted business as Broadway Salad Bar and Deli for approximately three years prior to her fall on September 16, 2004. Broadway Deli was located across the aisle from D & J Meats,[1] which leased from Municipal a cooler that had been leaking water. Kim alleged that Municipal was negligent in failing to properly inspect its premises, failing to clean up the water after it leaked, failing to post warnings regarding the water leak, and otherwise failing to keep the premises in a safe condition. Municipal argued that Kim had equal knowledge of the hazard, entitling it to summary judgment.[2]

In considering the grant of a motion for summary judgment, this court conducts a de novo review to determine whether the trial court properly found the absence of material issues of fact.[3] In conducting that review, we consider the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant.[4] To prevail in a slip and fall case, the plaintiff must show (1) that the defendant had actual or constructive knowledge of the hazard, and (2) that the plaintiff lacked knowledge of the hazard, despite the exercise of ordinary care, due to actions or conditions within the defendant's control.[5]

Properly construed, the evidence here was that, on September 16, 2004, Kim arrived at the market around 7:00 a.m. and walked down the aisle where she later fell. She worked at the deli for approximately an hour and then left the market to go vegetable shopping. She returned, had a market worker unload her vegetables, parked her car, and walked back down the aisle to the deli. Kim described her fall:

> As I was making a left turn, when I fell, I felt the plastic [wet floor sign] under my feet, and I slipped with the water. . . . I slipped on the plastic for sure. It was in the water. . . . It was a wet sign, and I guess, somebody, because it was the walkway, somebody must have kicked it and it fell in the water and when I was coming around the corner, I didn't see. . . . I felt just plastic and water together. . . . And I noticed the sign, yellow sign after that.

---

[1] D & J Meats is a co-defendant below.

[2] Although Municipal also argued below that certain language in the lease agreement precluded Kim's recovery, Municipal has withdrawn that argument for purposes of appeal.

[3] *Flores v. Strickland*, 259 Ga. App. 335 (577 SE2d 41) (2003).

[4] Id.

[5] See *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997).

Kim fell in the aisle between her deli and D & J Meats. The water in which she slipped was from the cooler of D & J Meats, and Kim said that "I seen times before that there was a leak." Asked if she had seen water in this area before, she answered "[y]es, every now and then I did[,]" and "[o]ccasionally I saw a few times." Also, asked if she had seen water coming from that cooler before, she answered "[y]es, I had seen it before." Asked at what times of day she had seen the leakage, Kim answered "[i]t just varies. You never did know when it was going to be there."

According to the market's manager, the market's file for D & J Meats contained notations of multiple warnings given regarding the leaking cooler. Lonnie Wymbs, supervisor over maintenance and security for Municipal, was aware that leaking water from D & J Meats' cooler had been a problem for a few weeks prior to Kim's fall. It was his practice, when he saw leaking water while conducting his regular patrol of the market, to call one of his workers to clean it up and place a wet floor sign in the area. Also, all tenants of the market were issued a wet floor sign to keep in their booths to use in case of a spill. When Wymbs arrived early on the morning of September 16, 2004, there was already a wet floor sign standing up in the aisle between the deli and D & J Meats. At approximately 10:00 a.m., Wymbs came by D & J Meats, as he did every 45 minutes during the day, and told the manager to clean up the water. Kim fell shortly thereafter.

Kim has made no allegation that Municipal had actual knowledge that the warning sign had fallen over into the puddle of water or that the placement of the warning sign itself created a hazard.[6] We conclude that the trial court correctly granted summary judgment to Municipal because Kim had equal knowledge of the hazard created by the water leaking from the cooler.

The facts in this case are similar to, and this case is controlled by, *Ethridge v. Davis*.[7] There, Davis, his wife, and their child had moved into an apartment owned by the defendants in 1994. Shortly after moving in, Davis noticed a leak in the ceiling of the kitchen around the light fixture which caused water puddles on the floor. A bathroom was located above the kitchen and the leak apparently originated there. Davis reported the leak to management six or seven

---

[6] See *Warberg v. Saint Louis Bread Co.*, 255 Ga. App. 352, 353 (565 SE2d 561) (2002) (failure of plaintiff to show bakery employees knew wet floor sign had fallen over fatal to claim); cf. *American Multi-Cinema v. Brown*, 285 Ga. 442, 446 (679 SE2d 25) (2009) (use of easily collapsible wet floor sign in an area trafficked by hordes of customers can in and of itself create an unreasonable risk of foreseeable harm to the public where plaintiff had no knowledge of the hazard).

[7] 243 Ga. App. 11 (530 SE2d 477) (2000).

months prior to his fall, as well as to the maintenance man. Davis said that he complained about the leak for almost a year. Mrs. Davis repeatedly cleaned up water on the floor from the leak, which was difficult to see due to the white linoleum in the kitchen. She said the leak occurred "different times different days" and Davis himself said one never knew when it might leak. On June 17, 1996, Mrs. Davis cleaned water from the floor in the morning. Around 5:00 p.m., Davis went into the kitchen and fell in water from the leak.[8]

Here, as in *Ethridge*, while there had been no repair of the problem leak, nothing done by the landlord prior to Kim's fall distracted her from the hazard created by water leaking from the cooler and the wet floor sign placed in the area. Rather, knowing that the leak was persistent but unpredictable, Kim walked directly into the area where the water leaked without looking at the floor. In doing so, Kim either "chose not to be or forgot to be careful of the known specific danger."[9] The fact that the water's presence was intermittent would mandate more, rather than less, care from the tenant who was aware that, if present, the water would present a hazard to her.[10]

Therefore, under these plain, palpable and undisputed facts, the trial court properly granted summary judgment to Municipal.[11]

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED MARCH 25, 2010.

*Thomas G. Tidwell*, for appellant.
*Hanks & Brookes, Jerald R. Hanks, Brandon G. Day, Mayer & Harper, Mark Harper*, for appellee.

---

[8] Id. at 12-13.

[9] Id. at 14.

[10] Id. at 15. See also *Briddle v. Cornerstone Lodge of America*, 288 Ga. App. 353, 355 (654 SE2d 188) (2007) (any person with ordinary common sense would recognize standing water on the floor as a hazard that might cause one to slip, and voluntarily walking across the area without looking precludes recovery from the landlord); *Flores*, supra at 337 (1) (equal knowledge of accumulated leaves on outside apartment stairs precluded recovery for injury to resident who slipped on leaves).

[11] *Ethridge*, supra at 15.