A97A1834. WEST LUMBER COMPANY v. BECK et al.
(497 SE2d 647)

BEASLEY, Judge.

Sherle Beck filed a complaint against West Lumber Company for damages arising from injuries she sustained in a slip and fall on West's premises. The trial court denied West's motion for summary judgment which addressed only whether Beck's own negligence prohibited her recovery. We granted West's application for interlocutory appeal.

Construing the facts favorably to Beck, on a very bright and sunny day in June 1994, while Beck was in a check-out line at West's building supply store, customer Avriett was exiting the store through a set of automatic doors. As she did, a can of white paint fell from her cart, spilling onto the white concrete ground. The size of the spill has been estimated as "maybe about the size of a basketball" by an employee of West, and "probably two by three feet" by Beck herself.

West positioned two managers at the exit almost immediately and made announcements calling for a cleaning crew. Before Beck exited, there were no warning signs or cones marking the spill. The shopping cart from which the paint fell was still located just inside the door, and Avriett was standing nearby. Within two to three minutes of the spill, Beck walked past the shopping cart, Avriett, and the two store managers in order to exit the store. She did not hear any warnings from store employees telling people to watch out for the

---

paint. She was looking ahead in a "normal manner" when, upon her first step through the automatic door, Beck's left foot slipped in the spilled paint and she fell in the paint, severely injuring her right knee. Thereafter she saw the paint can next to the spill.

West contends the undisputed facts show Beck failed to exercise ordinary care for her own safety, and second, that the paint spill was open and obvious, i.e., in "plain view." The instructions in the Supreme Court's recent decision in *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997) apply to the legal analysis.

Summary judgment is appropriate when the court, viewing all the evidence and drawing all reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to an essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "[T]he 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and . . . summary judgment is granted only when the evidence is plain, palpable, and undisputed." *Robinson*, supra at 748.

"[T]he defendant has the evidentiary burden as to the issue of the plaintiff's negligence after it has been established or assumed for purposes of a motion for summary judgment that the defendant was negligent, i.e., that the defendant had actual or constructive knowledge of the existence of a hazard on its premises." *Robinson*, supra at 748. There is no dispute that West had knowledge of the hazard. There is a factual issue as to whether it took adequate measures to protect its invitee Beck from the danger. This issue was not raised on appeal. West moved for summary judgment on the sole ground that the plaintiff's own negligence prohibited her recovery. Thus, to warrant summary judgment, West must present evidence "that the plaintiff's injuries were proximately caused either by the plaintiff's voluntary negligence, i.e., plaintiff's intentional and unreasonable exposure of self to a hazard of which plaintiff has knowledge, or by the plaintiff's casual negligence, i.e., the plaintiff's failure to exercise ordinary care for personal safety." Id.

Putting West's arguments in the framework of *Robinson*, West contends Beck was voluntarily negligent because (1) she had constructive knowledge of the spill, in that there were announcements and other facts which put her on notice and (2) she admitted the spill was in plain view and did not uphold her duty to take reasonable steps to avoid it. West contends she was casually negligent in that she admitted she failed to let her eyes adjust to the light before she proceeded and failed to look down as she was exiting.

1. *Voluntary negligence.* The initial question is, did Beck have constructive knowledge of the spill, i.e., was it in plain view or were

there other reasons she should have known of it. That is debatable. "The 'plain view' doctrine is the equivalent of the 'constructive knowledge' aspect of voluntary negligence on the part of the plaintiff." *Robinson*, supra at 743. It is "applied to a hazard in plain view at a location where it is customarily found and can be expected to be, but which the invitee professes not to have seen prior to the fall." Id. The paint was not where it is customarily found or could be expected to be. Thus, the doctrine as defined in *Robinson* does not apply here.[1]

Nor are there other undisputed facts to establish constructive knowledge as a matter of law. When approaching the door, although Beck saw Avriett and the cart and the two managers, she heard no warnings about the spill, and there was nothing plain, palpable, and undisputed about the scene to put her on notice. There allegedly were announcements about the spill, and one employee claims to have warned Beck as she exited, but Beck testified she heard nothing about it. Thus, we cannot conclude as a matter of law that she should have known of the spill before she fell, although a jury may find there were announcements and/or warnings and she should have heard them.

2. *Casual negligence.* We now address Beck's actions in leaving the store as measured against those of an ordinary and reasonable person where there is no warning of a spill. Beck testified that as she exited she was looking ahead in a "normal manner." She did not look down as she stepped. Failure of the injured person to look down as he or she steps, standing alone, does not entitle the owner/occupier to summary judgment. *Robinson*, supra at 743.

West argues that Beck admitted the spill could be seen. When asked in her deposition "how many store employees from their stations do you think could have seen that spill," she replied, "I would say one at this register closest to the exit." Beck was referring to a diagram she had drawn which was attached to her deposition as an exhibit. The diagram indicates that the employee to whom she was referring was located some distance behind where she would have been as she exited the store, i.e., the employee was farther from the spilled paint than Beck was as she exited. But this testimony came immediately after the following exchange: Q: "Do you think it was large enough that a store employee should have seen it?" A: "It was a very large spill, and they were aware that it was there, so I think they probably should have seen it." Thus it is unclear whether Beck understood the subsequent question to mean "Given that employees knew of the spill, which employees could see it from their workstations?"

---

[1] See also, e.g., *J. C. Penney Co. v. Knight*, 119 Ga. App. 70 (166 SE2d 434) (1969).

The meaning of Beck's statements is not sufficiently plain, palpable, and undisputed to justify summary judgment as required by the Supreme Court in *Robinson*. Further, the fact "that one inspecting a post-fall scene can observe a hazard from a standing position is not dispositive of whether or not the injured invitee was exercising ordinary care for personal safety before the fall. [Cit.]" *Robinson*, supra at 743.

Although West argues the paint fell on a black mat, Beck testified the white paint was on white concrete, not a mat, and hard to see. The paint can was near the spill, but she did not trip on it. Questions of fact and credibility are for the jury. Although the size of the spill was large, the degree of visibility to an exiting customer is a question of fact. Since this is in dispute, a jury must decide. Inherent is the question of credibility, which the appellate court cannot resolve. It must instead construe the evidence in Beck's favor.

During her deposition Beck testified that due to the changed lighting conditions as she exited the store, she did not have full use of her eyesight. Her deposition also indicates that she was aware that her vision was temporarily impaired: "I wasn't totally blinded, but I'm sure it did take some adjusting." She proceeded to step outside, "expect[ing] to have a clear passageway."

There is an issue of fact as to whether she would have seen the paint had she stopped to let her eyes adjust and whether she should have stopped, as one is not required to look down at every step. Application of the principles in *Robinson v. Kroger Co.* precludes summary judgment.

3. We need not address Beck's argument based on the distraction doctrine.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED MARCH 10, 1998.

*Sullivan, Hall, Booth & Smith, Karl M. Braun*, for appellant.
*J. Phillip Boston*, for appellees.