A08A1406. CARTER v. SMITH.

(669 SE2d 425)

JOHNSON, Presiding Judge.

Jerry Smith sued Dr. Glenn Carter for medical malpractice, alleging that Carter failed to timely examine and treat him after he fell and broke his hip. The jury found in favor of Smith and awarded him $144,000. Carter filed a motion for judgment notwithstanding

---

[12] (Punctuation omitted.) *Tachdjian,* supra at 170.

[13] Id. at 171.

[14] See *Bauerband,* supra; *Barkley,* supra.

the verdict (j.n.o.v.), which was denied by the trial court. Carter appeals, alleging that the trial court erred in (i) denying his motion for j.n.o.v. after determining that the testimony of Smith's sole expert witness was admissible pursuant to OCGA § 24-9-67.1 (c) (2); (ii) charging the jury; and (iii) denying his motion for a directed verdict. We discern no error and affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that Smith was admitted to a long term care facility in Liberty County on July 12, 2001. On July 21, 2001, Smith fell while attempting to get in his bed. The facility contacted Carter, who was Smith's physician, on July 25, 2001, and reported that Smith had fallen, was complaining of hip pain, and was asking for an x-ray and pain medication. Carter ordered that Smith remain on OxyContin, which he had previously prescribed for Smith's back pain. After Smith continued to complain of hip pain the next day, Carter claimed to have gone to the facility to examine Smith, but that claim was disputed by Smith and not confirmed by Smith's medical records. On July 27, 2001, an x-ray of Smith's hip was taken, and the x-ray technician reported that Smith likely had a fractured hip. In the days that followed, Smith continued to complain of pain, but Carter admitted that he did not examine Smith after the x-ray was taken.

On July 31, 2007, Smith engaged a new physician, who examined him, changed his pain medication, and ordered a CT scan for his hip. The CT scan was performed the following day and confirmed that Smith's hip was fractured. A surgeon admitted Smith to the hospital on August 2, 2001, and surgery on Smith's fractured hip was performed on August 4, 2001.

1. Both before and during trial, Carter challenged the admissibility of opinion evidence provided by Smith's expert witness. "The issue of the admissibility or exclusion of expert testimony rests in the broad discretion of the [trial] court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion."[2] Here, Carter claims that the trial court abused its discretion in finding that Smith's expert witness satisfied the requirements of OCGA § 24-9-67.1 (c) (2). We find no such abuse.

OCGA § 24-9-67.1 (c) (2) provides that the trial court may admit the opinion of an expert witness in a medical malpractice action only if, at the time of the act or omission alleged to have occurred, the expert had

---

[1] See, e.g., *Pendley v. Pendley*, 251 Ga. 30 (1) (302 SE2d 554) (1983) (in reviewing the denial of both a motion for a directed verdict and a motion for j.n.o.v., we must construe the evidence in the light most favorable to the prevailing party and determine whether there is any evidence to support the jury's verdict).

[2] (Citation omitted.) *Cotten v. Phillips*, 280 Ga. App. 280, 283 (633 SE2d 655) (2006).

actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given as the result of having been regularly engaged in: (A) The active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue.

In *Spacht v. Troyer*,[3] we held that a trial court did not abuse its discretion in excluding expert testimony regarding the standard of care in diagnosing a specific congenital defect where the expert had not shown that he had diagnosed that defect within the past five years. Carter alleges that the trial court should have similarly excluded the testimony of Smith's expert because he had not ordered an x-ray or CT scan or admitted anyone to the hospital in the past five years. Like Carter, however, the expert was board certified in internal medicine, and he had continued to engage in the practice of medicine in the years since he had ceased serving as an attending physician. The expert testified that he generally saw approximately six patients per week, including patients with acute problems and patients who resided in long term care facilities.

Contrary to Carter's assertions, this case differs from *Spacht*, where the expert sought to testify regarding a deviation from the standard of care relating to the failure to make a specific diagnosis. Here, Smith's expert testified that Carter deviated from the standard of care by not examining Smith after his fall at the long term care facility. Because the "treatment which is alleged to have been . . . rendered negligently" as provided by OCGA § 24-9-67.1 (c) (2) (A) was a simple examination of the patient by his physician, the trial court did not abuse its discretion in finding that the expert's current practice of examining patients in long term care facilities, including patients with acute problems, provided him with an "appropriate level of knowledge" to offer his opinion.[4]

2. Carter also claims that the trial court erroneously failed to give three of his requested jury charges and included a charge that was misleading. The review of allegedly erroneous jury instructions

---

[3] 288 Ga. App. 898, 903 (3) (a) (655 SE2d 656) (2007).
[4] See *Cotten*, supra at 283.

is a legal question, and we therefore owe no deference to the trial court's ruling and apply the "plain legal error" standard of review.[5]

(a) First, Carter sought to have the jury charged that a defendant in a medical malpractice case "cannot be found negligent on the basis of an assessment of a patient's condition which only later, or in hindsight, proves to be incorrect, as long as the initial assessment was made in accordance with the then reasonable standards of medical care."[6] Here, however, the case did not turn on whether Carter deviated from the standard of care based on his initial lack of knowledge that Smith had fractured his hip or whether Carter should have initially known that Smith's hip was fractured. Instead, the case turned on the care (or lack of care) provided by Carter to Smith based on information that was currently available to him — primarily that Smith had fallen, was complaining of hip pain despite being on OxyContin, and was requesting to be taken to the hospital for an x-ray. While Carter claimed that he did, in fact, go to the long term care facility to examine Smith after learning this information, the jury was authorized to believe otherwise.[7]

> The hindsight charge is appropriate in a medical malpractice case where the evidence raises an issue as to whether the negligence claim is premised on *later acquired knowledge* or information *not known or reasonably available* to the defendant physician at the time he provided the medical care.[8]

Because Smith's claim was premised on information known or reasonably available to Carter at the time, hindsight was not at issue in this case, and the trial court correctly refused to charge the jury as requested by Carter.

(b) Carter also asserts that the trial court erred in failing to give his requested charge that a physician is not an "insurer or warrantor" of the results of the treatment he or she provides. While such a charge may be proper in a case where a patient's claim involves treatment provided by his physician,[9] this is not such a case. Here, Smith's claim was based not on treatment provided by Carter, but

---

[5] *Horton v. Hendrix*, 291 Ga. App. 416, 418 (1) (662 SE2d 227) (2008).

[6] *Haynes v. Hoffman*, 164 Ga. App. 236, 238 (3) (296 SE2d 216) (1982).

[7] See *West Lumber Co. v. Beck*, 231 Ga. App. 46, 49 (2) (497 SE2d 647) (1998) ("Questions of fact and credibility are for the jury.").

[8] (Emphasis in original.) *Byrd v. Med. Center of Central Ga.*, 258 Ga. App. 286, 291-292 (3) (574 SE2d 326) (2002).

[9] See *Betha v. Ebanks*, 264 Ga. App. 4, 5 (2) (589 SE2d 831) (2003) (physical precedent only) (upholding trial court's "results of treatment" charge where patient suffered an allergic reaction to medication prescribed by physician).

rather on the lack of care he received after Carter was notified of his fall. Because Smith did not point to any treatment that was provided improperly, a "results of treatment" charge was not suited to the evidence, and the trial court properly refused to tender such a charge to the jury.[10]

(c) Carter claims that the trial court also erred in failing to instruct jurors that no inference should be drawn when neither party calls a witness who was mutually accessible to both parties. However, Carter did not request this "mutual accessibility" charge in his initial requests to charge. Instead, this claim of error appears to be based on the trial court's failure to give a charge originally submitted, but subsequently withdrawn, by Smith. After the trial court charged the jury, Carter objected to the absence of any instruction regarding mutual accessibility. A discussion ensued regarding why the charge had not been given, and the trial court offered to "bring [the jury] back out and . . . instruct them in that regard."

Instead of accepting the trial court's proposal, however, Carter's counsel continued to discuss the reasons why the charge had not been given in the first place. Because Carter did not elicit an adverse ruling from the trial court on his objection, he has waived any claim regarding the failure to give a mutual accessibility charge.[11]

(d) Carter also alleges that the trial court improperly charged the jury on ordinary negligence. Because the ordinary negligence charge had been requested by Carter, however, this enumeration is without merit.

In his proposed jury instructions, Carter requested that the trial court charge the jury as to both comparative negligence and ordinary negligence — presumably under the theory that the jury needed a legal definition of ordinary negligence to apply to Smith's actions following his fall. After the trial court charged the jury as to both theories, Carter objected to the ordinary negligence charge. "The act of requesting an instruction in the trial court constitutes a specific waiver of the right to enumerate it as error on appeal."[12] Because Carter induced any error related to the trial court's charge on ordinary negligence, this enumeration furnishes no ground for reversal.[13]

---

[10] See *McNabb v. Landis*, 223 Ga. App. 894, 895 (1) (479 SE2d 194) (1996) ("A charge which injects issues into a case not supported by the evidence tends to confuse a jury as to the true issues.") (citation and punctuation omitted).

[11] *Brown v. Hove*, 268 Ga. App. 732, 735 (2) (603 SE2d 63) (2004); *Jones v. Dykes*, 231 Ga. App. 110, 111 (3) (497 SE2d 828) (1998).

[12] *DeLoach v. State*, 272 Ga. 890, 892 (2) (536 SE2d 153) (2000).

[13] *Cherokee Nat. Life Ins. Co. v. Eason*, 276 Ga. App. 183, 187 (2) (622 SE2d 883) (2005).

3. Finally, Carter claims that the trial court erred in denying his motion for a directed verdict on Smith's claims for "future mental pain and suffering." Carter asserts that Smith failed to introduce any evidence of future pain and suffering and that Smith agreed not to seek such damages, and he points out that Smith's closing argument nevertheless specifically sought damages for future pain and suffering.

A review of the closing argument reveals, however, that Smith's counsel first argued that Smith should receive $144,000 to compensate him for physical pain and suffering he endured during the period prior to his hip surgery. Counsel then stated that the jury could award additional damages for future mental pain and suffering, although jurors were free to "value it at nothing" if "you think there's no evidence of it." Given that the jury returned a verdict for the $144,000 requested for past physical pain and suffering, Carter has failed to show any harm by the trial court's denial of his motion for a directed verdict or the reference to future mental pain and suffering made by Smith's counsel in his closing argument.[14]

*Judgment affirmed. Barnes, C. J., and Phipps, J., concur.*

DECIDED OCTOBER 27, 2008 —
RECONSIDERATION DENIED NOVEMBER 17, 2008 —

*Brennan & Wasden, Joseph P. Brennan, William R. Dekle,* for appellant.

*Cheney & Cheney, Curtis V. Cheney, Jr., Dubberly & McGovern, Joseph D. McGovern,* for appellee.

---

[14] See *All Fleet Refinishing v. West Ga. Nat. Bank*, 280 Ga. App. 676, 683 (7) (a) (634 SE2d 802) (2006).