**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN, P.J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**June 24, 2026**

# In the Court of Appeals of Georgia

A24A0886. COOK v. SMG CONSTRUCTION SERVICES, LLC.

MCFADDEN, Presiding Judge.

In *Cook v. SMG Constr. Servs.*, 373 Ga. App. 354 (908 SE2d 387) (2024), we held that the existence of a genuine issue of material fact regarding plaintiff Daniel Cook's knowledge of a hazard precluded summary judgment to defendant SMG Construction Services, LLC in this premises liability case. The Supreme Court of Georgia vacated our judgment, holding that as a matter of law Cook had actual knowledge of the hazard, an unguarded balcony ledge in a house under construction, and remanded for us to determine whether genuine issues of material facts existed as to the other elements of SMG's affirmative defenses: assumption of the risk and voluntary negligence. *SMG Constr. Servs. v. Cook*, 322 Ga. 819 (922 SE2d 76) (2025).

We therefore vacate our earlier opinion and in its place we adopt as our own the Supreme Court's opinion in *SMG Constr. Servs.*, 322 Ga. 819, and address the other elements of SMG's affirmative defenses. Finding that genuine issues of material fact do exist as to both of those defenses, we hold that SMG was not entitled to summary judgment and we reverse the trial court's grant of summary judgment to it.

1. *Facts and procedural history*

The facts of this case are set forth in detail in *SMG Constr. Servs.*, 322 Ga. at 820-21, and *Cook*, 373 Ga. App. at 355-56(1). In summary, the evidence viewed in the light most favorable to nonmovant Cook, see *Cowart v. Widener*, 287 Ga. 622, 624(1)(a) (697 SE2d 779) (2010), showed that Cook was badly injured in a fall from an interior balcony overlooking the foyer of a house under construction on property owned by SMG. Cook, an independent contractor, had been installing cabinetry in a bathroom that was on the second floor but not in the immediate vicinity of the balcony. The balcony did not have a guardrail, and environmental conditions at the time of Cook's fall, such as drywall dust, overspray, poor lighting, and lack of visual contrast, affected his ability to perceive the exact location of the edge of the balcony or its proximity to him. While straightening an air hose, Cook began to "shuffle"

2

backward across the floor outside the bathroom, stepped off of the edge of the balcony, and fell to the first floor of the house.

The Supreme Court held that the "evidence is insufficient to create a question of material fact as to [Cook's] actual knowledge [of the exposed ledge], the primary theory on which SMG's motion for summary judgment is based." *SMG Constr. Servs.*, 322 Ga. at 827. But the Court held that the

> conclusion that no issue of material fact exists with respect to Cook's actual knowledge of the specific hazard at issue is not the end of the inquiry because knowledge is only one element of the affirmative defenses raised in SMG's motion for summary judgment and ruled on by the trial court. While expressing no opinion on the strength or resolution of such arguments, we are able to imagine that the conditions Cook suggests impaired his perception of the hazard might be relevant to the elements of SMG's affirmative defenses. But we leave it to the Court of Appeals to determine on remand whether, in light of our conclusion that SMG has established Cook's actual knowledge of the hazard at issue, SMG has also shown the absence of any question of material fact concerning the other elements of its affirmative defenses.

Id. at 827-28. As explained below, we determine that SMG has not shown the absence of any question of material fact with regard to the other elements of its two affirmative defenses, assumption of the risk and voluntary negligence.

3

2. *Assumption of the risk*

"The affirmative defense of assumption of the risk bars a plaintiff from recovering on a negligence claim if it is established that he without coercion of circumstances, chooses a course of action with full knowledge of its dangers and while exercising free choice as to whether to engage in the act or not." *Kensington Place Owners Ass'n v. Thomas*, 318 Ga. App. 609, 611 (734 SE2d 445) (2012). "In its simplest and primary sense, assumption of the risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone." *Vaughn v. Pleasent*, 266 Ga. 862, 864(1) (471 SE2d 866) (1996) (emphasis omitted). See OCGA § 51-11-2 ("As a general rule no tort can be committed against a person consenting thereto if that consent is free, is not obtained by fraud, and is the action of a sound mind.").

The defense has three elements: (1) actual knowledge of the danger; (2) understanding and appreciation of the risks associated with the danger; and (3) voluntary exposure to those risks. *Vaughn*, 266 Ga. at 864(1); *Schuessler v. Bennett*, 287

Ga. App. 880, 887(3) (652 SE2d 884) (2007). SMG has established the first element of this defense, actual knowledge of the danger, as a matter of law. *SMG Constr. Servs.*, 322 Ga. at 827. And we find no genuine issue of material fact with regard to the second element, an understanding and appreciation of the risks associated with the danger, because "[n]o danger is more commonly realized and risk appreciated … than that of falling[.]" *Riley v. Brasunas*, 210 Ga. App. 865, 867(1) (438 SE2d 113) (1993) (quotation marks omitted).

But a jury question exists as to the third element of the defense, voluntary exposure to the risk. "Exposure to the known risk must be voluntary, the result of a deliberate choice." *Bass Custom Landscapes v. Cunard*, 258 Ga. App. 617, 620(1) (575 SE2d 17) (2002) (quotation marks omitted), overruled in part on other grounds by *Pollard v. Great Dane*, 371 Ga. App. 872, 875-76(2)(a) n.5 (903 SE2d 338) (2024). To be barred from recovery as a matter of law under the defense of assumption of the risk, Cook must have "voluntarily assume[d] a position of imminent danger[.]" *Daves v. Shepherd Spinal Ctr.*, 219 Ga. App. 835, 836(1) (466 SE2d 692) (1996) (quotation marks omitted).[1]

---

[1] The issue of whether a plaintiff voluntarily assumed a position of imminent danger also applies in the context of the so-called "hired worker exception," an

The fact that, at the time of the fall, Cook was performing a job on the second floor of the house does not mean that as a matter of law he voluntarily exposed himself to the hazard. "An employee's freedom of choice can be restricted by the circumstances under which he works and the coercion of seeking to remain employed." *York v. Winn-Dixie Atlanta*, 217 Ga. App. 839, 840 (459 SE2d 470) (1995) (citation modified). Nevertheless, "we have found assumption of the risk as a matter of law when an employee chooses a perilous course of conduct that he had been empowered to refuse." *Smith v. LT Nails*, 331 Ga. App. 98, 100 (770 SE2d 646) (2015). "A person cannot undertake to do what obviously is a dangerous thing, even if he is directed by another, without assuming the risks incident thereto[.]" *Batts v.*

---

exception to the duty of ordinary care that OCGA § 51-3-1 imposes upon owners and occupiers of land in some situations involving hired workers, who "recklessly test[] an observed and clearly obvious peril, or voluntarily assume[] a position of imminent danger."*Sinyard v. Ga. Power Co.*, 363 Ga. App. 195, 205, 208(2)(b) (871 SE2d 45) (2022) (quotation marks omitted). Indeed, we have described that exception to the statutory duty of care as "a narrow, specific expression of the doctrine of assumption of the risk." Id. at 208 (2)(b) (citation modified). The issue of whether SMG owed Cook a duty of ordinary care under OCGA § 51-3-1 is no longer at issue in this case. We resolved that question in Cook's favor in *Cook*, 373 Ga. App. at 360-61(2), and our Supreme Court neither addressed nor considered that portion of our opinion in *SMG Constr. Servs.*, 322 Ga. 819. Because that portion of our opinion regarding the application of OCGA § 51-3-1 to this case is not inconsistent with the Supreme Court's ruling, it becomes binding upon the return of the remittitur. See *Shadix v. Carroll County*, 274 Ga. 560, 563(1) (554 SE2d 465) (2001).

*Cracker Barrel Old Country Store*, 219 Ga. App. 327, 328 (464 SE2d 829) (1995) (citation modified).

Here, a genuine issue of material fact exists as to whether Cook chose a perilous course of conduct and voluntarily assumed a position of imminent danger, such that the defense of assumption of the risk would bar his claim. As detailed above, there is evidence that the second-floor bathroom in which he was installing cabinetry was not near the unprotected balcony and that Cook did not realize his proximity to the balcony edge when he began to straighten the air hose, due to the environmental conditions that impaired his perception of the location of the edge.

The dissent discounts that evidence, instead concluding that, as a matter of law, Cook "could not have been misguided by the existence of an optical illusion in the opposite direction of his line of sight." In doing so, the dissent focuses on Cook's perception at the moment he began to walk backwards, when he was not looking toward the balcony edge. Such focus is too narrow. Cook's perception of the location of that edge *before* he turned away from it and began to walk backwards, and the existence of conditions that impaired that perception, are also material to the issue of whether Cook voluntarily assumed a position of imminent danger.

"[T]he standard to be applied in assessing an assumption of the risk defense is a subjective one, geared to the particular plaintiff and his situation, rather than that of a reasonable person of ordinary prudence[.]" *Muldovan v. McEachern*, 271 Ga. 805, 808(2) (523 SE2d 566) (1999) (quotation marks omitted). "Except in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached, the jury must determine whether a claimant exercised ordinary care for his safety or assumed the risk of injury." *King v. Ga. Dep't of Corr.*, 347 Ga. App. 606, 608(2) (820 SE2d 445) (2018) (quotation marks omitted). Given the evidence that Cook was working in an area of the second floor at a distance from the unguarded balcony ledge under conditions that impaired his perception of its exact location, a jury question exists as to whether Cook deliberately chose to expose himself to the known risk of falling from the balcony. So SMG is not entitled to summary judgment on its defense of assumption of the risk.

3. *Voluntary negligence*

Voluntary negligence is "a type of contributory negligence[.]" *Robinson v. Kroger Co.*, 268 Ga. 735, 737-38 (493 SE2d 403) (1997) (punctuation omitted). Our Supreme Court has adopted the description of this type of negligence set forth in the

8

Second Restatement of Torts: "'an intentional and unreasonable exposure of the plaintiff to danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know.'" Id. at 738 (quoting Restatement of Law 2d, Torts, § 466(a) (punctuation omitted)). See also *Am. Multi-Cinema v. Brown*, 285 Ga. 442, 445(2) (679 SE2d 25) (2009) (holding that voluntary negligence is a plaintiff's "intentional disregard of a known risk"); *W. Lumber Co. v. Beck*, 231 Ga. App. 46, 47 (497 SE2d 647) (1998) (holding that voluntary negligence is a "plaintiff's intentional and unreasonable exposure of self to a hazard of which plaintiff has knowledge"). A comment to that clause of the Restatement notes that intentional exposure to the danger requires that the plaintiff "have the purpose to place himself within reach of it. It is not enough that his failure to exercise reasonable attention to his surroundings prevents him from observing the danger, or that lack of reasonable preparation or competence prevents him from avoiding it when the condition created by the defendant is known to him." Restatement of Law 2d, Torts, § 466(a), comment c.

A genuine issue of material fact exists as to whether Cook purposefully put himself within reach of the unguarded balcony ledge. As discussed above, there is evidence that the bathroom in which he was working was not near the ledge, and that

he could not accurately perceive its proximity when he began to straighten the air hose. For these reasons, SMG also was not entitled to summary judgment on its defense of voluntary negligence.

*Judgment reversed. Rickman, P.J. concurs in judgment only, and Mercier, J., dissents.*

A24A0886. COOK v. SMG CONSTRUCTION SERVICES, LLC.

MERCIER, Judge, dissenting.

After traversing a second-floor landing in a home under construction more than a dozen times, Daniel Cook, with actual knowledge that the ledge of that landing had no guardrails and an exposed dropoff, voluntarily chose to walk *backwards* towards the ledge *without looking behind him*. As a result, Cook stepped off the ledge, fell, and suffered injuries. Under these circumstances, Cook assumed the risk of his fall and acted with voluntary negligence. As such, the trial court correctly granted summary

judgment against him and in favor of the homeowner, SMG Construction Services, LLC ("SMG"), in this premises liability action. For this reason, I respectfully dissent.

Here, a careful review of the entire record is paramount, and we must consider all of Cook's testimony regarding his unfortunate fall. Given that the grant of a motion for summary judgment is being analyzed, we must "view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to [Cook]." *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) (citation and punctuation omitted). See also OCGA § 9-11-56 (c).

With these guiding principles in mind, Cook deposed that, on the day of his fall, he was acting as a subcontractor and installing bathroom cabinets in the home owned by SMG. This job required him to work on three bathrooms located on the second floor of the home. To reach these bathrooms, Cook deposed that he had to walk up a set of "straight" stairs with fifteen to sixteen steps to an "open space" or "foyer" at the top. This open space at the upper landing of the stairs was designed to look out and into the home's two-story entry foyer just inside the front door.V6  At the time that Cook was working on the home, it is undisputed that there was no guardrail installed at the edge of this open area. So, for orientation purposes, the unprotected ledge was directly in front of anyone who was standing on the top stair, and the

2

second-floor bathrooms in which Cook was installing cabinets were just to the left and right of the central open space.

According to Cook, he walked up and down the stairs to the various upper-level bathrooms at least eight times, meaning he traversed through the open space at the top of the stairs approximately fifteen times before his accident. As he walked up and down the stairs and left and right through the open space, Cook "knew [the ledge] was open[.]" Cook deposed, however, that he "didn't give the [open ledge] a second thought" because "it wasn't in [his] immediate workspace area." Cook further admitted that, before his fall, he "had gone up the stairs [and] seen a ledge that's not protected, but it wasn't a concern to him at the time[.]" Also, when asked to define his "immediate work area," Cook indicated that it was "[w]here I'm doing the work" which *included* "the area where [he was] coming up and down and walking and traversing and carrying cabinets and carrying tools[.]" And, Cook had to walk through at least part of the open area with the unguarded ledge to access the second-floor bathrooms located on each side of the open space.

With regard to the fall, itself, Cook deposed that, after he had begun installing cabinets in the Jack-and-Jill bathrooms just to the right of the landing or open space at the top of the stairs, he realized that an air hose that he needed to use had a kink in

3

it. (Cook had carried the hose up the stairs with him, and it was connected to an air compressor on the first floor.) To unkink the hose, Cook stepped out of the bathroom into "that common area," which was *only one or two steps* from the bathroom he was in at the time. He then began twisting the hose *while walking backwards towards the open ledge.* Cook admitted that, "[p]rior to taking [his] first step backwards, [h]e did not look behind [him]." In fact, he admitted that he did not look behind him "[a]t any point in time while [he] was pulling and tugging on this air hose[.]" Cook also admitted that he only took "two or three" steps backwards before he fell off the ledge. And, he agreed that he was, in fact, "[s]huffling backwards" in an open area where he had seen that there was no guardrail.

Nonetheless, Cook opined that the fall was one-hundred percent the fault of SMG. To explain the reason for his fall, Cook stated: "On a cloudy day in Georgia in December, and there's overspray on the floor along with drywall dust that kind of blends that edge in. So, I thought it was further away from where it was." He continued: "*I could see where it dropped off*, but as I explained already, the drywall dust, the overspray and the cloudy day all kind of blended it together. So, I thought it was further back than where it was."(Emphasis supplied.) But,  as pointed out above, Cook unequivocally deposed that he was walking backwards and not looking behind

4

him when he fell, so, in his backward shuffle to the ledge, he could not have been misguided by the existence of an optical illusion in the opposite direction of his line of sight.

Based on Cook's own version of events, the trial court properly granted summary judgment to SMG, as Cook assumed the risk of his fall. To support a ruling that Cook assumed the risk of falling, the evidence, viewed in the light most favorable to Cook, must show that he "(1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks." *Liles v. Innerwork, Inc.*, 279 Ga. App. 352, 354(2) (631 SE2d 408) (2006). Our Supreme Court has confirmed that Cook had actual knowledge of the open ledge (the first factor),[1] and, based on the plain record before us, Cook fully appreciated the danger the open ledge posed (the second factor). See *O'Neal v. Sikes*, 271 Ga. App. 391, 392 (609 SE2d 734) (2005) ("[N]o danger is more commonly realized or risk appreciated ... than that of falling."). And, despite actual knowledge of the ledge and appreciation of the danger it posed, Cook voluntarily chose to walk

---

[1] In *SMG Constr. Servs. v. Cook*, 322 Ga. 819 (922 SE2d 76) (2025), our Supreme Court determined that, under these circumstances, Cook had actual knowledge of the hazard that precipitated his injuries.

backwards in the common area next to the open ledge without looking back, knowingly exposing himself to the risk of falling (the third factor). In doing so, he assumed the risk of injury. See *Sones v. Real Estate Dev. Group*, 270 Ga. App. 507, 508-509(1) (606 SE2d 687) (2004) (holding that assumption of the risk barred employee's claims after he was injured when he was knocked off of platform being lifted by a forklift because after "two prior nights' use of the forklift and work platform with no guard rails or tie-offs and operating the forklift in darkness, [the employee] was aware of and appreciated both actually and subjectively the risk of injury by falling off the forklift").

Although, in most cases, the issue of assumption of the risk presents a question most suitable for a jury,

> where, as here, the issue is plain, palpable, and indisputable, summary judgment is appropriate. [SMG] met [its] burden to show that [Cook] knowingly and voluntarily assumed the risk of injury, and [Cook] has failed to meet [his] burden to defeat the affirmative defense of assumption of the risk. Accordingly, [SMG is] entitled to summary judgment as a matter of law.

*Fuller v. McCormick*, 340 Ga. App. 636, 641(1)(b) (798 SE2d 280) (2017) (citation and quotation marks omitted).

In the alternative, the facts of this case also support a grant of summary judgment in favor of SMG based on the affirmative defense of voluntary negligence.

6

Voluntary negligence generally refers to an "intentional disregard to a known risk[.]" *Henderson v. St. Paul Baptist Church*, 328 Ga. App. 123, 125 (761 SE2d 533) (2014). See also *Am. Multi-Cinema v. Brown*, 285 Ga. 442, 445(2) (679 SE2d 25) (2009) (same). Here, again, Cook knew about the open ledge, appreciated its danger, but intentionally and unreasonably disregarded that danger by blindly walking backwards towards it. As such, his own voluntary negligence resulted in his fall, and, as a result. the trial court properly granted SMG's motion for summary judgment. See *Landings Assn. v. Williams*, 291 Ga. 397, 400 (728 SE2d 577) (2012) (plaintiff "knowingly assumed the risks of walking in areas inhabited by wild alligators or failed to exercise ordinary care by doing so").

In closing, it is true and important that we must remain mindful "that the 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication[.]" *Robinson v. Kroger Co.*, 268 Ga. 735, 748(2) (493 SE2d 403) (1997). However, though tragic in result, voluntarily walking backwards over the edge of a cliff – or, in this case, the edge of a second-story landing – without looking is *exactly* the sort of act that *is* susceptible to summary judgment. Accordingly, I must dissent.